## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GENTEX CORPORATION, a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. |
| v. | ) ) | |
| REVISION MILITARY LTD., a Delaware corporation; and REVISION MILITARY, INC., a Canadian company, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) ) ) | |

## COMPLAINT

Plaintiff Gentex Corporation ("Gentex"), by its attorneys, alleges as follows for its Complaint against Defendant Revision Military Ltd. and Defendant Revision Military, Inc. (collectively, "Revision"):

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, a declaratory judgment pursuant to 28 U.S. Code § 2201(a), and for violation of the statutory requirement of good-faith in contracts under Article 1375 of the Civil Code of Québec.

## PARTIES

2.     Plaintiff Gentex is a corporation organized under the laws of Delaware with its principal place of business at 324 Main Street, Simpson, Pennsylvania 18407.

3.      Upon information and belief, Defendant Revision Military Ltd. is a corporation organized under the laws of Delaware with its principal place of business at 7 Corporate Drive, Essex Junction, Vermont 05452.

4.      Upon information and belief, Defendant Revision Military, Inc. is a Canadian corporation with its principal place of business located at 3800 Saint–Patrick, Suite 200, Montreal, Quebec, Canada H4E 1A4.

## JURISDICTION AND VENUE

5.      This is a civil action brought under federal laws against Defendant for patent infringement and declaratory judgment, and brought under laws of the Province of Québec against Defendant for breach of the requirement of good-faith in contracts, based on Revision's bad-faith refusal to acknowledge an assignment of contractual rights to Gentex.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court further has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Gentex's claims arising under statutory or common law.

8.      Defendant Revision Military Ltd. is subject to this Court's general and specific personal jurisdiction because it is incorporated in Delaware and has purposely availed itself of the privileges and benefits of the laws of the State of Delaware.  Moreover, upon information and belief, Revision Military Ltd. has sufficient minimum contacts within the State of Delaware because Revision Military Ltd. purposely availed itself of the privileges of conducting business in the State of Delaware; Revision Military Ltd. regularly conducts and solicits business within the State of Delaware; and Gentex's causes of action arise directly from Revision Military Ltd.'s business contacts and other activities in the State of Delaware.

9.     Defendant Revision Military, Inc. is subject to this Court's general and specific personal jurisdiction.   Upon information and belief, Revision Military, Inc. has sufficient minimum contacts within the State of Delaware because it purposely availed itself of the privileges of conducting business in the State of Delaware by offering for sale and selling the Revision Accused Products (defined *infra*).   Upon information and belief, Revision Military, Inc. regularly conducts and solicits business within the State of Delaware; and Gentex's causes of action arise directly from Revision Military, Inc.'s business contacts and other activities in the State of Delaware.

10.     This Court also has jurisdiction over Defendant Revision Military, Inc. pursuant to Delaware's Long Arm Statute, 10 *Del.* C. § 3104(c).

11.     Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c), 1400(a), and 1400(b).

## THE GENTEX INNOVATIVE HELMET SYSTEM

12.     Gentex is a leading provider of innovative solutions that enhance personal protection and situational awareness for global defense forces, emergency responders, and industrial personnel operating in high performance environments.   Gentex's philosophy of continually reinvesting in its employees, customers, and technologies, including its intellectual property, reflects the game-changing innovations Gentex has made for over a century.

13.     Specifically, Gentex has developed, improved, and sells the most innovative protective helmet system, which is a continuation of the long history of innovation by Artisent, Inc. ("Artisent").   On December 19, 2011, Gentex acquired Artisent assets, including its intellectual property and intellectual property licenses related to the protective helmet system, as well as the stock of Ops-Core, Inc.

14.     The launch of this innovative protective helmet system began in 2005 when Artisent developed a new rail system for a protective helmet and filed patents on this new rail system.  The rail system allows a user to quickly add accessories to the helmet.  The new rail system fundamentally changed the way users are equipped in combat and non-combat missions. These helmets are used by military, national security, and law enforcement personnel around the world.  Over the years Artisent, and then Gentex, continued to improve on this system and continued to obtain patents to protect these innovations.

15.     Currently, Gentex offers protective helmet systems with a retention system with improved strap and buckle configuration, a unique helmet cover appearance, and an innovative accessory rail connector, which includes a connection to the existing bolt holes of the helmet and a unique appearance.

16.     Gentex's protective helmet systems continue to be a critical component for military, law enforcement, and national security forces around the world. *See* https://dod.defense.gov/News/Contracts/Contract-View/Article/1813270/ (Gentex awarded a $95,000,000 contract to supply "Special Operations Forces Personal Equipment Advance Requirements (SPEAR) family tactical headborne systems in support of U.S. Special Operations Command (USSOCOM)").

17. An example of one of Gentex's protective helmets, sold under the Ops-Core brand, is below:



*See* https://gentexcorp.com/ops-core/helmet-systems/ ("Ops-Core FAST® (Ballistic Helmets)"). Gentex also sells protective helmets and helmet systems under other brand names.

## THE GENTEX ASSERTED PATENTS

### A.    U.S. Patent No. 7,849,517

18. Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. 7,849,517 ("the '517 Patent"), including the right to assert all causes of action arising under the '517 Patent and the right to any remedies for infringement, including remedies for past infringements.

19. The '517 Patent, entitled "Mounting System For Accessories On A Safety Helmet" was issued by the United States Patent and Trademark Office on December 14, 2010. The '517 Patent issued from United States Patent Application No. 11/350,477, filed on February 9, 2006. The '517 Patent claims priority to Provisional Application No. 60/691,307, filed on June 17, 2005. A copy of the '517 Patent is attached as **Exhibit A**.

20.     The inventions of the '517 Patent are generally directed to a mounting facility for a safety helmet having a helmet shell and retention straps.  The mounting facility generally comprises a fixture attachable to the helmet shell for receiving an accessory.

21.     The '517 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**B.     U.S. Patent No. 7,908,667**

22.     Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. 7,908,667 ("the '667 Patent"), including the right to assert all causes of action arising under the '667 Patent and the right to any remedies for infringement, including remedies for past infringements.

23.     The '667 Patent, entitled "Mounting System For Accessories On A Safety Helmet" was issued by the United States Patent and Trademark Office on March 22, 2011.  The '667 Patent issued from United States Patent Application No. 11/350,591, filed on February 9, 2006.  The '667 Patent claims priority to Provisional Application No. 60/691,307, filed on June 17, 2005.  A copy of the '667 Patent is attached as **Exhibit B**.

24.     The inventions of the '667 Patent are generally directed to a mounting facility comprising a fixture for receiving an accessory.  The fixture has a plurality of apertures that align with at least two existing through-holes in the shell of a safety helmet.

25.     The '667 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**C.     U.S. Patent No. 8,028,344**

26.     Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. 8,028,344 ("the '344 Patent"), including the right to assert all causes of action arising under the

'344 Patent and the right to any remedies for infringement, including remedies for past infringements.

27.     The '344 Patent, entitled "Hinged Attachment Of Headgear To A Helmet" was issued by the United States Patent and Trademark Office on October 4, 2011.  The '344 Patent issued from United States Patent Application No. 11/760,412, filed on June 8, 2007.  The '344 Patent is a continuation-in-part of Application No. 11/350,591, filed on February 9, 2006, now the '667 Patent, and it claims priority to Provisional Application No. 60/691,307, filed on June 17, 2005, and Provisional Application No. 60/811,896, filed on June 8, 2006.  A copy of the '344 Patent is attached as **Exhibit C**.

28.     The inventions of the '344 Patent are generally directed to a mounting facility for a safety helmet, the mounting facility comprising a fixture and attached to the fixture an articulating arm assembly for receiving an ear accessory.

29.     The '344 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

        **D.      U.S. Patent No. 9,072,328**

30.     Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. 9,072,328 ("the '328 Patent"), including the right to assert all causes of action arising under the '328 Patent and the right to any remedies for infringement, including remedies for past infringements.

31.     The '328 Patent, entitled "Hinged Attachment Of Headgear To A Helmet" was issued by the United States Patent and Trademark Office on July 7, 2015.  The '328 Patent issued from United States Patent Application No. 13/224,559, filed on September 2, 2011.  The '328 Patent is a continuation of Application No. 11/760,412, filed on June 8, 2007, now the '344 Patent, which is a continuation-in-part of Application No. 11/350,591, filed on February 9, 2006,

now the '667 Patent. The '328 Patent also claims priority to Provisional Application No. 60/691,307, filed on June 17, 2005 and Provisional Application No. 60/811,896, filed on June 8, 2006. A copy of the '328 Patent is attached as **Exhibit D**.

32. The inventions of the '328 Patent are generally directed to an ear accessory retention system for a helmet comprising a mounting rail configured to attach to an outer surface of the helmet and a hinge mechanism configured to couple to an ear accessory.

33. The '328 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**E.     U.S. Patent No. 9,717,294**

34. Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. 9,717,294 ("the '294 Patent"), including the right to assert all causes of action arising under the '294 Patent and the right to any remedies for infringement, including remedies for past infringements.

35. The '294 Patent, entitled "Hinged Attachment Of Headgear To A Helmet" was issued by the United States Patent and Trademark Office on August 1, 2017. The '294 Patent issued from United States Patent Application No. 14/260,393, filed on April 24, 2014. The '294 Patent is a continuation of Application No. 13/224,559, filed on September 2, 2011, now the '328 Patent, which is a continuation of Application No. 11/760,412, filed on June 8, 2007, now the '344 Patent, which is a continuation-in-part of Application No. 11/350,591, filed on February 9, 2006, now the '667 Patent. The '294 Patent also claims priority to Provisional Application No. 60/691,307, filed on June 17, 2005 and Provisional Application No. 60/811,896, filed on June 8, 2006. A copy of the '294 Patent is attached as **Exhibit E**.

8

36. The inventions of the '294 Patent are generally directed to a mounting rail configured to attach to an outer surface of a helmet, wherein the mounting rail may include a retaining groove, and methods of using the same.

37. The '294 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**F.      U.S. Patent No. D788,378**

38. Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. D788,378 ("the '378 Patent"), including the right to assert all causes of action arising under the '378 Patent and the right to any remedies for infringement, including remedies for past infringements.

39. The '378 Patent, entitled "Helmet Cover" was issued by the United States Patent and Trademark Office on May 30, 2017. The '378 Patent issued from United States Patent Application No. 29/581,591, filed on October 20, 2016. The '378 Patent is a division of Application No. 29/534,965, filed on August 3, 2015, now U.S. Patent No. D774,704. A copy of the '378 Patent is attached as **Exhibit F**.

40. The '378 Patent claims an ornamental design for a helmet cover.

41. The '378 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**G.      U.S. Patent No. D794,256**

42. Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. D794,256 ("the '256 Patent"), including the right to assert all causes of action arising under the '256 Patent and the right to any remedies for infringement, including remedies for past infringements.

43.    The '256 Patent, entitled "Helmet Cover" was issued by the United States Patent and Trademark Office on August 8, 2017.  The '256 Patent issued from United States Patent Application No. 29/589,917, filed on January 5, 2017.  The '256 Patent is a continuation of Application No. 29/581,593, filed on October 20, 2016, now U.S. Patent No. D788,379, which is a division of Application No. 29/534,965, filed on August 3, 2015, now U.S. Patent No. D774,704.  A copy of the '256 Patent is attached as **Exhibit G**.

44.    The '256 Patent claims an ornamental design for a helmet cover.

45.    The '256 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**H.    U.S. Patent No. D750,846**

46.    Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. D750,846 ("the '846 Patent"), including the right to assert all causes of action arising under the '846 Patent and the right to any remedies for infringement, including remedies for past infringements.

47.    The '846 Patent, entitled "Helmet Mounted Rail" was issued by the United States Patent and Trademark Office on March 1, 2016.  The '846 Patent issued from United States Patent Application No. 29/530,503, filed on June 17, 2015.  The '846 Patent is a continuation of Application No. 14/260,393, filed on April 24, 2014, which is a continuation of Application No. 13/224,559, filed on September 2, 2011, now the '328 Patent, which is a continuation of Application No. 11/760,412, filed on June 8, 2007, now the '344 Patent, which is a continuation-in-part of Application No. 11/350,591, filed on February 9, 2006, now the '667 Patent.  A copy of the '846 Patent is attached as **Exhibit H**.

48.    The '846 Patent claims an ornamental design for a helmet mounted rail.

49.     The '846 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**I.      U.S. Patent No. D750,847**

50.     Gentex is the assignee and owner of the right, title, and interest in U.S. Patent No. D750,847 ("the '847 Patent"), including the right to assert all causes of action arising under the '847 Patent and the right to any remedies for infringement, including remedies for past infringements.

51.     The '847 Patent, entitled "Helmet Mount" was issued by the United States Patent and Trademark Office on March 1, 2016.  The '847 Patent issued from United States Patent Application No. 29/530,524, filed on June 17, 2015.  The '847 Patent is a continuation of Application No. 14/260,393, filed on April 24, 2014, which is a continuation of Application No. 13/224,559, filed on September 2, 2011, now the '328 Patent, which is a continuation of Application No. 11/760,412, filed on June 8, 2007, now the '344 Patent, which is a continuation-in-part of Application No. 11/350,591, filed on February 9, 2006, now the '667 Patent.  A copy of the '847 Patent is attached as **Exhibit I**.

52.     The '847 Patent claims an ornamental design for a helmet mount.

53.     The '847 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

54.     The '517 Patent, the '667 Patent, the '344 Patent, the '328 Patent, the '294 Patent, the '378 Patent, the '256 Patent, the '846 Patent, and the '847 Patent are referred to collectively as the "Gentex Asserted Patents."

55.     Gentex provides public notice in compliance with 35 U.S.C. § 287 that its helmet systems incorporate the inventions of, among others, the Gentex Asserted Patents.  *See, e.g.*, https://shop.gentexcorp.com/content/UM-1034.pdf;     https://gentexcorp.com/patents/.     Upon

information and belief, Revision was on notice of the Gentex Asserted Patents by at least October 30, 2009 because of the Revision Agreement (defined *infra*).  Additionally, as of at least May 4, 2017, Revision was on notice of the '846 Patent, the '847 Patent, and the '517 Patent because of a letter sent to Revision Military Ltd.

## THE REVISION ACCUSED PRODUCTS

56.     Upon information and belief, Revision makes, uses, offers to sell, sells, and/or imports into the United States the following types of products: (i) helmets, (ii) helmet systems, (iii) Modernization Kits, (iv) Rail Systems, (v) Front Mounts, and (vi) Headset Rail Attachments. *See* https://www.revisionmilitary.com/.

### A.     Helmets and Helmet Systems

57.     Upon information and belief, Revision makes, uses, offers to sell, sells, and/or imports into the United States three different product families of helmets and/or helmet systems: (i) Viper, (ii) Cobra, and (iii) Caiman.   *See*  https://www.revisionmilitary.com/en/head-systems/helmets.

### 1.     Viper Family of Helmets and Helmet Systems

58.     The Viper family of helmets includes the Viper (i) P4 Helmet, which is available as a Full Cut Helmet, a Mid Cut Helmet, and a High Cut Helmet; (ii) A3 Helmet, which is available as a Full Cut Helmet, a Mid Cut Helmet, and a High Cut Helmet; and (iii) P2 Helmet, which is available as a Full Cut Helmet, a Mid Cut Helmet, and a High Cut Helmet.   *See* https://www.revisionmilitary.com/en/head-systems/helmets.    Each   of   these   Viper   helmets includes a helmet shell and retention straps.   *Id.*   Upon information and belief, Revision also had a Viper A1 Helmet, available as a Full Cut Helmet, a Mid Cut Helmet, and a High Cut Helmet that it made, used, offered for sale, sold, and/or imported into the United States.   *See* **Ex. J** at 3.

59.    The Viper family of helmets also includes Helmet Systems, including the Viper (i) P4 Full Cut Helmet System, (ii) P4 High Cut Helmet System, (iii) A3 Full Cut Complete System, and (iv) P2 Full Cut Complete System. https://www.revisionmilitary.com/en/head-systems/helmets.   Upon information and belief, the Helmet Systems combine a Viper helmet with, among other features, the Viper Interlocking Long Rails and the Batlskin Viper Front Mount.

60.    The Viper P4 Full Cut Helmet System is illustrated below as an example of one of the Viper Helmet Systems.



(https://www.revisionmilitary.com/en/head-systems/helmets/viper-p4-full-cut-helmet-system)

61.    Revision describes this Viper P4 Full Cut Helmet System as including, among other things, the Viper P4 Full Cut Helmet Shell, a Front Mount, and Interlocking Long Rails. *See* https://www.revisionmilitary.com/en/head-systems/helmets/viper-p4-full-cut-helmet-system.

### 2.    Cobra Helmets and Helmet Systems

62.    The Cobra family of helmets and helmet systems includes the Cobra (i) P2 Full Cut Helmet and (ii) P2 Full Cut Complete System.    *See* https://www.revisionmilitary.com/en/head-systems/helmets.    The P2 Full Cut Helmet includes a helmet shell and retention straps.    Upon information and belief, the Cobra P2 Full Cut Complete System combines the Cobra P2 Full Cut helmet with the Cobra Mini Rails and the Cobra Front Mount.    *See*    https://www.revisionmilitary.com/en/head-systems/helmets/batlskin-cobra-p2-complete-system.

63.    The Cobra P2 Full Cut Helmet System is illustrated below.



(https://www.revisionmilitary.com/en/head-systems/helmets/batlskin-cobra-p2-complete-system)

### 3.    Caiman Helmet Systems

64.    The Caiman Family of Helmet Systems includes the Caiman (i) Bump Helmet System, (ii) Ballistic Helmet System, and (iii) Hybrid Helmet System.    *See* https://www.revisionmilitary.com/en/head-systems/helmets.    Each of these Caiman Helmet Systems includes a helmet shell and retention straps.  Upon information and belief, each of the Caiman Helmet Systems also includes a Rail System and a Shroud.

65.    The Caiman Ballistic Helmet System is illustrated below as an example of one type of Caiman Helmet System.



(https://www.revisionmilitary.com/en/batlskin-caiman/caiman-ballistic-helmet-system)

66.     Revision describes the Caiman Ballistic Helmet System as including, among other things, a (i) Caiman Ballistic Shell, (ii) Rail System, and (iii) Wilcox® L4 Series Shroud.  *See* https://www.revisionmilitary.com/en/batlskin-caiman/caiman-ballistic-helmet-system.

**B.     Viper Modernization Kits**

67.     Upon information and belief, Revision makes, uses, offers to sell, sells, and/or imports into the United States two types of Viper Modernization Kits: (i) Viper Modernization Kit – Essential and (ii) Viper Modernization Kit – Deluxe.  *See* https://www.revisionmilitary.com/en/head-systems/accessories.

68.     Upon information and belief, the Viper Modernization Kit – Essential includes a Viper Front Mount, Viper Interlocking Long Rails, a Viper MultiCam® Premium Full Cut Helmet Cover, and a Hardware Kit.  *See* https://www.revisionmilitary.com/en/catalog/product/view/id/111/s/modernization-kit-essential/category/183/.

69.     Upon information and belief, the Viper Modernization Kit – Deluxe includes a Viper Front Mount, Viper Interlocking Long Rails, a Viper MultiCam® Premium Full Cut Helmet Cover, a Viper Tan 499 Modular Suspension System, and a Hardware Kit.  *See* https://www.revisionmilitary.com/en/catalog/product/view/id/108/s/modernization-kit-deluxe/category/183/.

**C.     Rail Systems**

70.     Upon information and belief, Revision makes, uses, offers to sell, sells, and/or imports into the United States the following Rail Systems: (i) Viper Interlocking Long Rails, and (ii) Cobra Mini Rails.  *See* https://www.revisionmilitary.com/en/head-systems/rail-system.

### 1.    Viper Interlocking Long Rails

71.    The Viper Interlocking Long Rails are illustrated below.



(https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails)

72.    Upon information and belief, the Viper Interlocking Long Rails "must be used in conjunction with the Batlskin Viper Front Mount" and are compatible for use with the Viper full, mid, and high cut helmets.    *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

73.    Upon information and belief, Revision advertises "Features" of the Viper Interlocking Long Rails as providing "[m]ultiple entry points along the upper and lower dovetails [to] enable cameras, lights, and other accessories to be mounted."  *Id*.

74.    Upon information and belief, Revision provides on its website a Specification Sheet for the Viper Interlocking Long Rails that states the "Interlocking Long Rail System consists of two rails which seamlessly integrate with the Batlskin Front Mount" and that the "rails have multiple entry points and accept widely used rail bases . . . ."  *See* **Ex. K**.  The Specification Sheet for the Interlocking Long Rails further states that it "[m]atches helmet shell curvature ensuring secure helmet mounting for accessory stability."  *Id*.  The Specification Sheet for the Interlocking Long Rails also states that "[e]ntry points along upper and lower dovetails

enable multiple accessories to be mounted" and that it "[u]ses existing helmet holes – no new drilled holes required." *Id.*

75.     Upon information and belief, Revision also provides a YouTube video on its website that describes the Viper Head Protection system and explains that accessories may be quickly attached by "sliding the device onto the rails." *See* https://www.youtube.com/watch?time_continue=4&v=2W7B3w_sAA8.

### 2.      Cobra Mini Rails

76.     The Cobra Mini Rails are illustrated below.



(https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails)

77.     Upon information and belief, the Cobra Mini Rails are compatible for use with the Cobra helmet.    *See*   https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails.  Upon information and belief, Revision advertises "Features" of the Cobra Mini Rails as allowing for the "[i]nstall [of] cameras, flashlights, and other headborne accessories quickly and easily, and fluidly swivel and reposition without detachment." *Id.*   Upon information and belief, Revision also states on its website that the "Cobra Rails fit flush against the curvature of the CG634-style helmet, interlock seamlessly with the Front Mount, and support a wide-range of headborne devices for the Cobra MPAS." *Id.*

### D.   Front Mounts

78.   Upon information and belief Revision makes, uses, offers to sell, sells, and/or imports into the United States the following Front Mounts: (i) Viper Front Mount and (ii) Cobra Front Mount.  *See* https://www.revisionmilitary.com/en/head-systems/front-mounts.

### 1.   Viper Front Mount

79.   The Viper Front Mount is illustrated below.



80.   Upon information and belief, Revision states on its website that the Viper Front Mount "integrates with Viper Interlocking Long Rails" and is compatible with Viper full, mid, and high cut helmets.   *See*   https://www.revisionmilitary.com/en/head-systems/front-mounts/batlskin-front-mount-for-ach-helmet.

81.   Upon information and belief, Revision provides a Specification Sheet for the Viper Front Mount on its website that states it "[u]ses existing helmet holes – no new drilled holes required."  *See* **Ex. L**.

### 2. Cobra Front Mount

82. The Cobra Front Mount is illustrated below.



83. Upon information and belief, Revision states on its website that the Cobra Front Mount is compatible with the Cobra helmet.  *See* https://www.revisionmilitary.com/en/head-systems/front-mounts/batlskincobra-front-mount.

84. Upon information and belief, Revision provides a Specification Sheet for the Cobra Front Mount on its website that states it "[u]ses existing helmet holes – no new drilled holes required."  *See* **Ex. M**.

### E. Headset Rail Attachments

85. Upon information and belief Revision makes, uses, offers to sell, sells, and/or imports into the United States Headset Rail Attachments.  *See* https://www.revisionmilitary.com/en/comms-systems/accessories/rail-attachments.

86.     A Headset Rail Attachment is illustrated below.



87.     Upon information and belief, Revision states on its website that the Headset Rail Attachments "[a]ttach headset ear cups to helmet side rails using these attachments, featuring an extendable arm, pressure adjustment, a release latch, and 180° rotation." *See* https://www.revisionmilitary.com/en/comms-systems/accessories/rail-attachments/headset-rail-attachments. Upon information and belief, Revision also states on its website that Features of the Headset Rail Attachment include "headset ear cups [that] connect directly to helmet side rails as an alternative to the standard headband" and that "Rail Attachments have a release latch and rotate 180° along the hinge for stowage behind ear." *Id*.

88.     Upon information and belief, Revision provides a Specification Sheet on its website for the Headset Rail Attachments that states it "[a]ttaches to earcups using an extendable arm" and "[s]lides into lower portion of rail and rotates 180° allowing for stowage behind ear." *See* **Ex. N**.

89.     The products listed in paragraphs 56-88 are referred to collectively as the "Revision Accused Products." Upon information and belief, Revision makes, uses, offers for

sale, sells, and/or imports into the United States each of the Revision Accused Products.  For example, upon information and belief, Revision attaches the following tag to its Caiman Helmet System:



**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,849,517**

90.     Gentex realleges and incorporates by reference the allegations contained in paragraphs 1 through 89 of the Complaint as though fully set forth herein.

91.     Upon information and belief, Revision has infringed and continues to infringe directly and/or indirectly, literally and/or under the doctrine of equivalents, at least claim 1 of the '517 Patent by making, using, offering for sale, selling, and/or importing into the United States the following Revision Accused Products: (i) Viper Interlocking Long Rails, (ii) Batlskin Viper Front Mount, (iii) Viper P4 Full Cut Helmet System, (iv) Viper P4 High Cut Helmet System,

(v) Viper P2 Full Cut Complete System, (vi) Viper A3 Full Cut Complete System, (vii) Viper Modernization Kit – Essential, (viii) Viper Modernization Kit – Deluxe, (ix) Cobra Mini Rails, (x) Cobra Front Mount, (xi) Cobra P2 Full Cut Complete System, (xii) Caiman Ballistic Helmet System, (xiii) Caiman Hybrid Helmet System, and (xiv) Caiman Bump Helmet System.

92.     Claim 1 of the '517 Patent claims the following:

A mounting facility for a safety helmet having a helmet shell and retention straps affixed thereto, the mounting facility comprising:

(i) a fixture, attachable to the helmet shell, for securely receiving an accessory, wherein the fixture comprises a rail for slidably and adjustably receiving a plurality of accessories thereon, and

(ii) a plurality of apertures aligning with existing through-holes in the helmet shell for facilitating common affixation of the mounting facility and retention straps thereto.

**A.     Viper Interlocking Long Rails**

93.     Revision's Viper Interlocking Long Rails include all of the limitations of at least claim 1 of the '517 Patent.  Upon information and belief, the Viper Interlocking Long Rails comprise a fixture comprising a rail that is attachable to a helmet shell and securely receives an accessory.  *See*  https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

94.     Upon information and belief, the Viper Interlocking Long Rails slidably and adjustably receive a plurality of accessories thereon.  For example, the Specification Sheet for the Interlocking Long Rails states that "[e]ntry points along upper and lower dovetails enable multiple accessories to be mounted," **Ex. K**, and a YouTube video describing the Viper Head Protection system explains that accessories can be quickly attached by "sliding the device onto the rails." *See* https://www.youtube.com/watch?time_continue=4&v=2W7B3w_sAA8.

95.     Upon information and belief, the Viper Interlocking Long Rails comprises a plurality of apertures aligning with existing through-holes in the helmet shell for facilitating common affixation of the mounting facility and retention straps thereto.  For example, the Specification Sheet for the Interlocking Long Rails explains that it "[u]ses existing helmet holes – no new drill holes required."  *See* **Ex. K**.

96.     Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Viper Interlocking Long Rails to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-viper/batlskin-viper-interlocking-long-rails.

97.     Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '517 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Viper Interlocking Long Rails constitutes direct infringement of at least claim 1 of the '517 Patent.

98.     In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Viper Interlocking Long Rails.  *See* https://www.revisionmilitary.com/en/batlskin-viper/batlskin-viper-interlocking-long-rails.

99.     Upon information and belief, Revision is liable for contributory infringement of the '517 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Viper Interlocking Long Rails, which include at least a component that is a material part of the invention of the '517 Patent.   The Viper Interlocking Long Rails are especially made or especially adapted for use in infringing the '517 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

**B.     Viper Interlocking Long Rails and Batlskin Viper Front Mount**

100.     Revision's Viper Interlocking Long Rails combined with the Batlskin Viper Front Mount include the limitations of at least claim 1 of the '517 Patent.   Revision states on its website that Viper Interlocking Long Rails "must be used in conjunction with the Batlskin Viper Front Mount" and illustrates their use on a safety helmet.   *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

101.     Upon information and belief, Revision makes, uses, offers for sale, sells, and/or imports into the United States the combination of the Viper Interlocking Long Rails and the Batlskin Viper Front Mount.

102.     Upon information and belief, the Viper Interlocking Long Rails in combination with the Batlskin Viper Front Mount comprise a fixture comprising a rail (Viper Interlocking Long Rails) that is attachable to a helmet shell and securely receives an accessory.   *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

103.     Upon information and belief, the Viper Interlocking Long Rails slidably and adjustably receive a plurality of accessories thereon.   For example, the Specification Sheet for the Interlocking Long Rails states that "[e]ntry points along upper and lower dovetails enable

multiple accessories to be mounted," **Ex. K**, and a YouTube video describing the Viper Head Protection system explains that accessories can be quickly attached by "sliding the device onto the rails."  *See* https://www.youtube.com/watch?time_continue=4&v=2W7B3w_sAA8.

104.    Upon information and belief, the Viper Interlocking Long Rails and Batlskin Viper Front Mount comprises a plurality of apertures aligning with existing through-holes in the helmet shell for facilitating common affixation of the mounting facility and retention straps thereto.  For example, the Specification Sheet for the Interlocking Long Rails explains that it "[u]ses existing helmet holes – no new drill holes required."  *See* **Ex. K**.  Similarly, the Specification Sheet for the Batlskin Front Mount also states that it "[u]ses existing helmet holes – no new drill holes required."  *See* **Ex. L**.

105.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Viper Interlocking Long Rails and Batlskin Viper Front Mount to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-viper.

106.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '517 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Viper Interlocking Long Rails and Batlskin Viper Front Mount constitutes direct infringement of at least claim 1 of the '517 Patent.

107.   In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Viper Interlocking Long Rails and Batlskin Viper Front Mount.   *See* https://www.revisionmilitary.com/en/batlskin-viper.

108.   Upon information and belief, Revision is liable for contributory infringement of the '517 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Viper Interlocking Long Rails and Batlskin Viper Front Mount, which include at least a component that is a material part of the invention of the '517 Patent.  The Viper Interlocking Long Rails and Batlskin Viper Front Mount are especially made or especially adapted for use in infringing the '517 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

### C.   Viper Helmet Systems and Modernization Kits

109.   The following Revision Accused Products include all of the limitations of at least claim 1 of the '517 Patent: (i) Viper P4 Full Cut Helmet System, (ii) Viper P4 High Cut Helmet System, (iii) Viper P2 Full Cut Complete System, (iv) Viper A3 Full Cut Complete System, (v) Viper Modernization Kit – Essential, and (vi) Viper Modernization Kit – Deluxe.

110.   Upon information and belief, each of the Revision Accused Products listed in paragraph 109 includes the Viper Interlocking Long Rails and Batlskin Viper Front Mount as part of the system.   *See, e.g.*,   https://www.revisionmilitary.com/en/head-systems/helmets?product_family=41;   https://www.revisionmilitary.com/en/head-systems/accessories.  For reasons discussed above in paragraphs 93-95 and 100-104, the Viper Interlocking Long Rails and Batlskin Viper Front Mount contain each of the limitations of claim 1 of the '517 Patent.

111.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports the Revision Accused Products listed in paragraph 109 to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware. *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/head-systems/helmets?product_family=41; https://www.revisionmilitary.com/en/head-systems/accessories.

112.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '517 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Revision Accused Products listed in paragraph 109 constitutes direct infringement of at least claim 1 of the '517 Patent.

113.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Revision Accused Products listed in paragraph 109.   *See, e.g.* https://www.revisionmilitary.com/en/head-systems/helmets?product_family=41;                https://www.revisionmilitary.com/en/head-systems/accessories.

114.    Upon information and belief, Revision is liable for contributory infringement of the '517 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Revision Accused Products listed in paragraph 109, which include at least a component that is a material part of the invention of the '517 Patent.  The Revision Accused

Products listed in paragraph 109 are especially made or especially adapted for use in infringing the '517 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

**D.  Cobra Mini Rails**

115.    Revision's Cobra Mini Rails include all of the limitations of at least claim 1 of the '517 Patent.  Upon information and belief, the Cobra Mini Rails comprise a fixture comprising a rail that is attachable to a helmet shell and securely receives an accessory.  *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails.

116.    Upon information and belief, the Cobra Mini Rails slidably and adjustably receive a plurality of accessories thereon and comprise a plurality of apertures aligning with existing through-holes in the helmet shell for facilitating common affixation of the mounting facility and retention straps thereto.

117.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Cobra Mini Rails to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S.");   https://www.revisionmilitary.com/en/batlskin-cobra-mini-rails.

118.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '517 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Cobra Mini Rails constitutes direct infringement of at least claim 1 of the '517 Patent.

119.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Cobra Mini Rails.  *See* https://www.revisionmilitary.com/en/batlskin-cobra-mini-rails.

120.    Upon information and belief, Revision is liable for contributory infringement of the '517 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Cobra Mini Rails, which include at least a component that is a material part of the invention of the '517 Patent.  The Cobra Mini Rails are especially made or especially adapted for use in infringing the '517 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

**E.      Cobra Mini Rails and Cobra Mini Front Mount**

121.    Upon information and belief, the Cobra Mini Rails are used in conjunction with the Cobra Front Mount.  *See*  https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails.  The Cobra Mini Rails with the Cobra Front Mount include all of the limitations of at least claim 1 of the '517 Patent.  Upon information and belief, Revision makes, uses, offers for sale, sells, and/or imports into the United States the combination of the Cobra Mini Rails and the Cobra Front Mount.

122.    Upon information and belief, the Cobra Mini Rails with the Cobra Front Mount comprises a fixture comprising a rail that is attachable to a helmet shell and securely receives an accessory.  *See*  https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails.

123.    Upon information and belief, the Cobra Mini Rails slidably and adjustably receives a plurality of accessories thereon.  *Id.*  Upon information and belief, the Cobra Mini Rails with the Cobra Front Mount comprises a plurality of apertures aligning with existing

through-holes in the helmet shell for facilitating common affixation of the mounting facility and retention straps thereto.  *Id*; *see also* **Ex. M**.

124.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Cobra Mini Rails with the Cobra Front Mount to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails; https://www.revisionmilitary.com/en/head-systems/front-mounts/cobra-front-mount/batlskincobra-front-mount.

125.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '517 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Cobra Mini Rails with the Cobra Front Mount constitutes direct infringement of at least claim 1 of the '517 Patent.

126.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Cobra Mini Rails with the Cobra Front Mount.  *See* https://www.revisionmilitary.com/en/batlskin-cobra-mini-rails; https://www.revisionmilitary.com/en/head-systems/front-mounts/cobra-front-mount/batlskincobra-front-mount.

31

127.    Upon information and belief, Revision is liable for contributory infringement of the '517 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Cobra Mini Rails and the Cobra Front Mount, which include at least a component that is a material part of the invention of the '517 Patent.  The Cobra Mini Rails and the Cobra Front Mount are especially made or especially adapted for use in infringing the '517 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

**F.**    **Cobra P2 Full Cut Complete System**

128.    Revision's Cobra P2 Full Cut Complete System contains the limitations of at least claim 1 of the '517 Patent.

129.    Upon information and belief, the Cobra P2 Full Cut Complete System includes the Cobra Mini Rails and the Cobra Front Mount as part of the system.    *See* https://www.revisionmilitary.com/en/batlskin-cobra/batlskin-cobra-p2-complete-system.    For reasons discussed above in paragraphs 115-116 and 121-123, the Cobra Mini Rails and Cobra Front Mount contain each of the limitations of claim 1 of the '517 Patent.

130.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Cobra P2 Full Cut Complete System to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.    *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-cobra/batlskin-cobra-p2-complete-system.

131.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '517 Patent under 35 U.S.C. § 271(b) by, among other things,

actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Cobra P2 Full Cut Complete System constitutes direct infringement of at least claim 1 of the '517 Patent.

132.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Cobra P2 Full Cut Complete System.  *See* https://www.revisionmilitary.com/en/batlskin-cobra/batlskin-cobra-p2-complete-system.

133.    Upon information and belief, Revision is liable for contributory infringement of the '517 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Cobra P2 Full Cut Complete System, which include at least a component that is a material part of the invention of the '517 Patent.  The Cobra P2 Full Cut Complete System is especially made or especially adapted for use in infringing the '517 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**G.    Caiman Family Helmets**

134.    The following Revision Caiman Products contain the limitations of at least claim 1 of the '517 Patent: (i) Caiman Ballistic Helmet System, (ii) Caiman Hybrid Helmet System, and (iii) Caiman Bump Helmet System.

135.    Upon information and belief, each of the Revision Accused Products in paragraph 134 include a Rail System and a Shroud attached to the helmet.  *See* https://www.revisionmilitary.com/en/head-systems/helmets?product_family=206.    Upon information and belief, the Rail System and Shroud comprise a fixture comprising a rail (Rail System) that is attachable to the helmet shell and securely receives an accessory.  Upon

information and belief, the Rail System of each of the Revision Accused Products in paragraph 134 slidably and adjustably receives a plurality of accessories thereon.

136.    Upon information and belief, the Rail System and Shroud comprise a plurality of apertures aligning with existing through-holes in the helmet shell for facilitating common affixation of the mounting facility and retention straps thereto.

137.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Revision Accused Products listed in paragraph 134 to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/batlskin-caiman (listing prices for each of the Revision Accused Products in paragraph 134).

138.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '517 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Revision Accused Products listed in paragraph 134 constitutes direct infringement of at least claim 1 of the '517 Patent.

139.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Revision Accused Products listed in paragraph 134.  *See* https://www.revisionmilitary.com/en/batlskin-caiman.

140.    Upon information and belief, Revision is liable for contributory infringement of the '517 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States Revision Accused Products listed in paragraph 134, which each include at least a

component that is a material part of the invention of the '517 Patent.  The Revision Accused Products listed in paragraph 134 are each especially made or especially adapted for use in infringing the '517 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

141.    By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '517 Patent in violation of 35 U.S.C. § 271.

142.    Upon information and belief, Revision's infringement of the '517 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

143.    Upon information and belief, Revision's infringement of the '517 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,908,667

144.    Gentex realleges and incorporates by reference the allegations contained in paragraphs 1 through 143 of the Complaint as though fully set forth herein.

145.    Upon information and belief, Revision has infringed and continues to infringe directly and/or indirectly, literally and/or under the doctrine of equivalents, at least claim 1 of the '667 Patent by making, using, offering for sale, selling, and/or importing into the United States the following Revision Accused Products: (i) Viper Interlocking Long Rails, (ii) Batlskin Viper Front Mount, (iii) Viper P4 Full Cut Helmet System, (iv) Viper P4 High Cut Helmet System, (v) Viper P2 Full Cut Complete System, (vi) Viper A3 Full Cut Complete System, (vii) Viper

Modernization Kit – Essential, (viii) Viper Modernization Kit – Deluxe, (ix) Cobra Mini Rails, (x) Cobra Front Mount, and (xi) Cobra P2 Full Cut Complete System.

146.    Claim 1 of the '667 Patent claims the following:

For use with a safety helmet of the type that has a bulge or protrusion on a side thereof and at least two existing through-holes for securing to the helmet at least one helmet-retention strap, a mounting facility comprising

a fixture for securely receiving an accessory and configured for attachment to the helmet above the bulge when worn, wherein

(i) the fixture comprises a rail for slidably and adjustably receiving a plurality of accessories thereon, and

(ii) the fixture has a plurality of apertures aligning with at least two of the existing through-holes in the helmet shell for facilitating common affixation of the fixture and at least one helmet-retention strap thereto.

**A.    Viper Interlocking Long Rails**

147.    Revision's Viper Interlocking Long Rails include all of the limitations of at least claim 1 of the '667 Patent.  Upon information and belief, the Viper Interlocking Long Rails comprise a fixture comprising a rail that is attachable to a helmet shell above a bulge on the shell and securely receives an accessory.  *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

148.    Upon information and belief, the Viper Interlocking Long Rails slidably and adjustably receive a plurality of accessories thereon.  For example, the Specification Sheet for the Interlocking Long Rails states that "[e]ntry points along upper and lower dovetails enable multiple accessories to be mounted," **Ex. K**, and a YouTube video describing the Viper Head Protection system explains that accessories can be quickly attached by "sliding the device onto the rails." *See* https://www.youtube.com/watch?time_continue=4&v=2W7B3w_sAA8.

149.    Upon information and belief, the Viper Interlocking Long Rails comprise a plurality of apertures aligning with at least two of the existing through-holes in the helmet shell

for facilitating common affixation of the fixture and at least one helmet-retention strap thereto. For example, the Specification Sheet for the Interlocking Long Rails explains that it "[u]ses existing helmet holes – no new drill holes required."  *See* **Ex. K**.

150.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Viper Interlocking Long Rails to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

151.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '667 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Viper Interlocking Long Rails constitutes direct infringement of at least claim 1 of the '667 Patent.

152.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Viper Interlocking Long Rails.  *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

153.    Upon information and belief, Revision is liable for contributory infringement of the '667 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Viper Interlocking Long Rails, which include at least a component that is a material part of the invention of the '667 Patent.   The Viper Interlocking Long Rails are especially made or especially adapted for use in infringing the '667 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

### B.     Viper Interlocking Long Rails and Batlskin Viper Front Mount

154.    Revision's Viper Interlocking Long Rails combined with the Batlskin Viper Front Mount include the limitations of at least claim 1 of the '667 Patent.   Revision states on its website that Viper Interlocking Long Rails "must be used in conjunction with the Batlskin Viper Front Mount" and illustrates their use on a safety helmet.   *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.   Upon information and belief, Revision makes, uses, offers for sale, sells, and imports into the United States the combination of the Viper Interlocking Long Rails and the Batlskin Viper Front Mount.

155.    Upon information and belief, the Viper Interlocking Long Rails in combination with the Batlskin Viper Front Mount comprise a fixture comprising a rail (Interlocking Long Rails) that is attachable to a helmet shell above a bulge on the shell and securely receives an accessory.    *See*   https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

156.    Upon information and belief, the Viper Interlocking Long Rails slidably and adjustably receive a plurality of accessories thereon.   For example, the Specification Sheet for the Interlocking Long Rails states that "[e]ntry points along upper and lower dovetails enable multiple accessories to be mounted," **Ex. K**, and a YouTube video describing the Viper Head

38

Protection system explains that accessories can be quickly attached by "sliding the device onto the rails."  *See* https://www.youtube.com/watch?time_continue=4&v=2W7B3w_sAA8.

157.    Upon information and belief, the Viper Interlocking Long Rails and Batlskin Viper Front Mount comprise a plurality of apertures aligning with at least two of the existing through-holes in the helmet shell for facilitating common affixation of the fixture and at least one helmet-retention strap thereto.  For example, the Specification Sheet for the Interlocking Long Rails explains that it "[u]ses existing helmet holes – no new drill holes required."  *See* **Ex. K**.

158.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Viper Interlocking Long Rails and Batlskin Viper Front Mount to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*,  https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-viper.

159.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '667 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Viper Interlocking Long Rails and Batlskin Viper Front Mount constitutes direct infringement of at least claim 1 of the '667 Patent.

160.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Viper

Interlocking Long Rails and Batlskin Viper Front Mount. *See* https://www.revisionmilitary.com/en/batlskin-viper.

161. Upon information and belief, Revision is liable for contributory infringement of the '667 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Viper Interlocking Long Rails and Batlskin Viper Front Mount, which include at least a component that is a material part of the invention of the '667 Patent. The Viper Interlocking Long Rails and Batlskin Viper Front Mount are especially made or especially adapted for use in infringing the '667 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

### C. Viper Helmet Systems and Modernization Kits

162. The following Revision Viper Products include all of the limitations of at least claim 1 of the '667 Patent: (i) Viper P4 Full Cut Helmet System, (ii) Viper P4 High Cut Helmet System, (iii) Viper P2 Full Cut Complete System, (iv) Viper A3 Full Cut Complete System, (v) Viper Modernization Kit – Essential, and (vi) Viper Modernization Kit – Deluxe.

163. Upon information and belief, each of the Revision Accused Products listed in paragraph 162 includes the Viper Interlocking Long Rails and Batlskin Viper Front Mount as part of the system. *See, e.g.,* https://www.revisionmilitary.com/en/head-systems/helmets; https://www.revisionmilitary.com/en/head-systems/accessories. For reasons discussed above in paragraphs 147-149 and 154-157, the Viper Interlocking Long Rails and Batlskin Viper Front Mount contain each of the limitations of claim 1 of the '667 Patent.

164. Upon information and belief, Revision markets, offers for sale, sells, and/or imports the Revision Accused Products listed in paragraph 162 to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware. *See, e.g.,* https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin

Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-viper.

165.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '667 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Revision Accused Products listed in paragraph 162 constitutes direct infringement of at least claim 1 of the '667 Patent.

166.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Revision Accused Products listed in paragraph 162. *See, e.g.*, https://www.revisionmilitary.com/en/batlskin-viper.

167.    Upon information and belief, Revision is liable for contributory infringement of the '667 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Revision Accused Products listed in paragraph 162, which include at least a component that is a material part of the invention of the '667 Patent. The Revision Accused Products listed in paragraph 162 are especially made or especially adapted for use in infringing the '667 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

**D.    Cobra Mini Rails**

168.    Revision's Cobra Mini Rails include all of the limitations of at least claim 1 of the '667 Patent. Upon information and belief, the Cobra Mini Rails comprise a fixture comprising a rail that is attachable to a helmet shell above a bulge on the helmet shell for securely receiving an

41

accessory. *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails.

169.    Upon information and belief, the Cobra Mini Rails slidably and adjustably receives a plurality of accessories thereon and have a plurality of apertures aligning with at least two of the existing through-holes in the helmet shell for facilitating common affixation of the fixture and at least one helmet-retention strap thereto. *Id.*

170.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Cobra Mini Rails to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware. *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-cobra-mini-rails.

171.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '667 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Cobra Mini Rails constitutes direct infringement of at least claim 1 of the '667 Patent.

172.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Cobra Mini Rails. *See* https://www.revisionmilitary.com/en/batlskin-cobra-mini-rails.

173.    Upon information and belief, Revision is liable for contributory infringement of the '667 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the

United States the Cobra Mini Rails, which include at least a component that is a material part of the invention of the '667 Patent.  The Cobra Mini Rails are especially made or especially adapted for use in infringing the '667 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

        **E.**        **Cobra Mini Rails and Cobra Front Mount**

174.    Upon information and belief, the Cobra Mini Rails are used in conjunction with the Cobra Front Mount.    *See*    https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails.  The Cobra Mini Rails with the Cobra Front Mount contain all of the limitations of at least claim 1 of the '667 Patent.  Upon information and belief, Revision makes, uses, offers for sale, sells, and imports into the United States the combination of the Cobra Mini Rails and the Cobra Front Mount

175.    The Cobra Mini Rails with the Cobra Front Mount comprises a fixture comprising a rail that is attachable to a helmet shell above a bulge on the helmet shell for securely receiving an accessory. *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-cobra-mini-rails.

176.    Upon information and belief, the Cobra Mini Rails slidably and adjustably receives a plurality of accessories thereon.  *Id*.  Upon information and belief, the Cobra Mini Rails and the Cobra Front Mount have a plurality of apertures aligning with at least two of the existing through-holes in the helmet shell for facilitating common affixation of the fixture and at least one helmet-retention strap thereto.  *Id.*; *see also* **Ex. M**.

177.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Cobra Mini Rails with the Cobra Front Mount to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Cobra

Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-cobra-mini-rails;

https://www.revisionmilitary.com/en/head-systems/front-mounts/cobra-front-mount/batlskincobra-front-mount.

178.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '667 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Cobra Mini Rails with the Cobra Front Mount constitutes direct infringement of at least claim 1 of the '667 Patent.

179.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Cobra Mini Rails with the Cobra Front Mount.  *See* https://www.revisionmilitary.com/batlskin-cobra.

180.    Upon information and belief, Revision is liable for contributory infringement of the '667 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Cobra Mini Rails and the Cobra Front Mount, which include at least a component that is a material part of the invention of the '667 Patent.  The Cobra Mini Rails and the Cobra Front Mount are especially made or especially adapted for use in infringing the '667 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

F.    **Cobra P2 Full Cut Complete System**

181.    Revision's Cobra P2 Full Cut Complete System contains the limitations of at least claim 1 of the '667 Patent.

182.    Upon information and belief, the Cobra P2 Full Cut Complete System includes the Cobra Mini Rails and the Cobra Front Mount as part of the system.    *See* https://www.revisionmilitary.com/en/batlskin-cobra/batlskin-cobra-p2-complete-system.    For reasons discussed above in paragraphs 168-169 and 174-176, the Cobra Mini Rails and Cobra Front Mount contain each of the limitations of claim 1 of the '667 Patent.

183.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Cobra P2 Full Cut Complete System to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.    *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-cobra/batlskin-cobra-p2-complete-system.

184.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '667 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Cobra P2 Full Cut Complete System constitutes direct infringement of at least claim 1 of the '667 Patent.

185.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Cobra P2 Full Cut Complete System.    *See* https://www.revisionmilitary.com/en/batlskin-cobra/batlskin-cobra-p2-complete-system.

186.     Upon information and belief, Revision is liable for contributory infringement of the '667 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Cobra P2 Full Cut Complete System, which include at least a component that is a material part of the invention of the '667 Patent.  The Cobra P2 Full Cut Complete System is especially made or especially adapted for use in infringing the '667 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

187.     By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '667 Patent in violation of 35 U.S.C. § 271.

188.     Upon information and belief, Revision's infringement of the '667 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

189.     Upon information and belief, Revision's infringement of the '667 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 8,028,344**

190.     Gentex realleges and incorporates by reference the allegations contained in paragraphs 1 through 189 of the Complaint as though fully set forth herein.

191.     Upon information and belief, Revision has infringed and continues to infringe directly and/or indirectly, literally and/or under the doctrine of equivalents, at least claim 1 of the '344 Patent by making, using, offering for sale, selling, and/or importing into the United States the following Revision Accused Products: (i) Viper Interlocking Long Rails, (ii) Batlskin Viper

Front Mount, (iii) Viper P4 Full Cut Helmet System, (iv) Viper P2 Full Cut Complete System, (v) Viper A3 Full Cut Complete System, (vi) Viper Modernization Kit – Essential, (vii) Viper Modernization Kit – Deluxe, (viii) Cobra Mini Rails, (ix) Cobra Front Mount, (x) Cobra P2 Full Cut Complete System, and (xi) Headset Rail Attachment.

192.    Claim 1 of the '344 Patent claims the following:

A mounting facility for a safety helmet of the type having at least two existing through-holes for securing to the helmet at least one helmet-retention strap and a bulge or protrusion on a side thereof to form a cavity therein, the cavity extending to a terminal edge of the helmet and overlying a wearer's ear, the mounting facility comprising:

a. a fixture configured for attachment to the helmet above the bulge; the fixture having a plur[al]ity of apertures aligning with the existing through-holes in the helmet for facilitating common affixation of the mounting facility and retention straps thereto; and

b. attached to the fixture, an articulating arm assembly for receiving an ear accessory, the arm assembly facilitating insertion of the ear accessory into the cavity and its removal therefrom around the terminal edge.

193.    As described in paragraphs 147-149, 154-157, 168-169, and 174-176, upon information and belief, the Viper Interlocking Long Rails; Viper Interlocking Long Rails in combination with the Batlskin Viper Front Mount; the Cobra Mini Rails; and the Cobra Mini Rails in combination with the Cobra Front Mount comprise a fixture configured for attachment to a helmet above a bulge in the helmet, the fixture having a plurality of apertures aligning with the existing through-holes in the helmet for facilitating common affixation of the mounting facility and retention straps thereto.

194.    As described in paragraph 163, upon information and belief, the Viper P2 Full Cut Complete System; Viper P4 Full Cut Helmet System; Viper A3 Full Cut Complete System; Viper Modernization Kit – Essential; and Viper Modernization Kit – Deluxe includes the Viper Interlocking Long Rails and Batlskin Viper Front Mount as part of the system.    Upon

information and belief, the Viper Interlocking Long Rails combined with the Batlskin Viper Front Mount comprise a fixture configured for attachment to a helmet above a bulge in the helmet, the fixture having a plurality of apertures aligning with the existing through-holes in the helmet for facilitating common affixation of the mounting facility and retention straps thereto. *See* ¶¶ 154-157.  As described in paragraph 182, upon information and belief, the Cobra P2 Full Cut Complete System includes the Cobra Mini Rails and the Cobra Front Mount.   Upon information and belief, the Cobra Mini Rails combined with the Cobra Front Mount comprise a fixture configured for attachment to a helmet above a bulge in the helmet, the fixture having a plurality of apertures aligning with the existing through-holes in the helmet for facilitating common affixation of the mounting facility and retention straps thereto. *See* ¶¶ 174-176.

195.   Upon information and belief, Revision makes, uses, offers for sale, sells, and/or imports into the United States a Headset Rail Attachment that allows "headset ear cups [to] connect directly to helmet side rails." *See* https://www.revisionmilitary.com/en/comms-systems/accessories/headset-rail-attachments.   Upon information and belief, this Headset Rail Attachment is an articulating arm assembly for receiving an ear accessory that attaches to the fixture and facilitates insertion of the ear accessory into the cavity and its removal therefrom around the terminal edge.   For example, the Specification sheet explains that it "[s]lides into lower portion of rail and rotates 180º. *See* **Ex. N**.

196.   Upon information and belief, as the Headset Rail Attachment "connect[s] directly to helmet side rails," https://www.revisionmilitary.com/en/comms-systems/accessories/headset-rail-attachments, it would be made, used, offered for sale, sold, and/or imported into the United States with at least the following Revision products, but not limited to, (i) Viper Interlocking Long Rails, (ii) Viper Interlocking Long Rails and Batlskin Viper Front Mount, (iii) Cobra Mini

Rails, (iv) Cobra Mini Rails and Cobra Front Mount, (v) Viper P4 Full Cut Helmet System, (vi) Viper P2 Full Cut Complete System, (vii) Viper A3 Full Cut Complete System, (viii) Cobra P2 Full Cut Complete System, (ix) Viper Modernization Kit – Essential, and (x) Viper Modernization Kit - Deluxe.

197.   Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States each of the Revision Accused Products listed in paragraph 191 to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.   *See, e.g.*,   https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S.");        https://www.revisionmilitary.com/en/comms-systems/accessories/headset-rail-attachments.

198.   Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '344 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the each of the Revision Accused Products listed in paragraph 191 constitutes direct infringement of at least claim 1 of the '344 Patent.

199.   In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing each of the Revision Accused Products listed in paragraph 191.

200.   Upon information and belief, Revision is liable for contributory infringement of the '344 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the

United States each of the Revision Accused Products listed in paragraph 191, which include at least a component that is a material part of the invention of the '344 Patent.  Each of the Revision Accused Products listed in paragraph 191 is especially made or especially adapted for use in infringing the '344 Patent, and each is not a staple article or commodity of commerce suitable for substantial non-infringing use.

201.    By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '344 Patent in violation of 35 U.S.C. § 271.

202.    Upon information and belief, Revision's infringement of the '344 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

203.    Upon information and belief, Revision's infringement of the '344 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,072,328**

204.    Gentex realleges and incorporates by reference the allegations contained in paragraphs 1 through 203 of the Complaint as though fully set forth herein.

205.    Upon information and belief, Revision has infringed and continues to infringe directly and/or indirectly, literally and/or under the doctrine of equivalents, at least claim 1 of the '328 Patent by making, using, offering for sale, selling, and/or importing into the United States the following Revision Accused Products: (i) Viper Interlocking Long Rails, (ii) Batlskin Viper Front Mount, (iii) Viper P4 Full Cut Helmet System, (iv) Viper P2 Full Cut Complete System,

(v) Viper A3 Full Cut Complete System, (vi) Viper Modernization Kit – Essential, (vii) Viper Modernization Kit – Deluxe, (viii) Cobra Mini Rails, (ix) Cobra Front Mount, (x) Cobra P2 Full Cut Complete System, (xi) Headset Rail Attachment, (xii) Viper P4 High Cut Helmet System, (xiii) Caiman Ballistic Helmet System, (xiv) Caiman Bump Helmet System, and (xv) Caiman Hybrid Helmet System.

206.   Claim 1 of the '328 Patent claims the following:

An ear accessory retention system for a helmet comprising:

a mounting rail configured to attach to an outer surface of a helmet, the mounting rail including a plurality of holes configured to align with existing through-holes in the helmet for facilitating common affixation of the mounting rail and retention straps to the helmet; and

a hinge mechanism having a first end and a second end, the first end releaseably coupled to the mounting rail, the second end configured to couple to an ear accessory,

wherein the hinge mechanism and the mounting rail are configured to position and retain the ear accessory over a user's ear in a use position, and the hinge mechanism and the mounting rail are configured to position and retain the ear accessory proximate a back of the helmet in a stowage position.

207.   As described in paragraphs 147-149, 154-157, 168-169, and 174-176, upon information and belief, the Viper Interlocking Long Rails; Viper Interlocking Long Rails in combination with the Batlskin Viper Front Mount; the Cobra Mini Rails; and the Cobra Mini Rails in combination with the Cobra Front Mount comprise a mounting rail configured to attach to an outer surface of a helmet, the mounting rail including a plurality of holes configured to align with existing through-holes in the helmet for facilitating common affixation of the mounting rail and retention straps to the helmet.

208.   As described in paragraph 163, upon information and belief, the Viper P4 Full Cut Helmet System; Viper P2 Full Cut Complete System; Viper A3 Full Cut Complete System; Viper P4 High Cut Helmet System; Viper Modernization Kit – Essential; and Viper

Modernization Kit – Deluxe includes the Viper Interlocking Long Rails and Batlskin Viper Front Mount as part of the system.  Upon information and belief, the Viper Interlocking Long Rails combined with the Batlskin Viper Front Mount comprise a mounting rail configured to attach to an outer surface of a helmet, the mounting rail including a plurality of holes configured to align with existing through-holes in the helmet for facilitating common affixation of the mounting rail and retention straps to the helmet.  *See* ¶¶ 154-157.  As described in paragraph 182, upon information and belief, the Cobra P2 Full Cut Complete System includes the Cobra Mini Rails and the Cobra Front Mount.   Upon information and belief, the Cobra Mini Rails combined with the Cobra Front Mount comprise a mounting rail configured to attach to an outer surface of a helmet, the mounting rail including a plurality of holes configured to align with existing through-holes in the helmet for facilitating common affixation of the mounting rail and retention straps to the helmet. *See* ¶¶ 174-176

209.    As described in paragraphs 134-136, upon information and belief, the Caiman Hybrid Helmet System; Caiman Bump Helmet System; and Caiman Ballistic Helmet System comprise a mounting rail configured to attach to an outer surface of a helmet, the mounting rail including a plurality of holes configured to align with existing through-holes in the helmet for facilitating common affixation of the mounting rail and retention straps to the helmet.

210.    Upon information and belief, Revision makes, uses, offers for sale, sells, and/or imports into the United States a Headset Rail Attachment that allows "headset ear cups [to] connect directly to helmet side rails."    *See* https://www.revisionmilitary.com/en/comms-systems/accessories/headset-rail-attachments.   Upon information and belief, this Headset Rail Attachment comprises a hinge mechanism having a first end and a second end, the first end releasably coupled to a mounting rail and a second end configured to couple to an ear accessory.

*Id.*  For example, the Specification sheet explains that it "[s]lides into lower portion of rail and rotates 180º" and it "attach[es] headset ear cups to helmet side rails."  *See* **Ex. N**.  The Revision website further describes "Features" of the Headset Rail Attachment by stating: "Rail Attachment arm can be adjusted – extending out, swiveling on the joint, or rotating on the hinge – to distribute pressure, create a better seal, and support comfort preference."  *See* https://www.revisionmilitary.com/en/comms-systems/accessories/headset-rail-attachments.

211.    Upon information and belief, the hinge mechanism of the Headset Rail Attachment attached to one of the mounting rails described above in paragraphs 207-209 are configured to position and retain the ear accessory over a user's ear in a use position and retain the ear accessory proximate a back of the helmet in a stowage position.  For example, the website describes the Headset Rail Attachment features as being able to "rotate 180º along the hinge for stowage behind ear."  *See*  https://www.revisionmilitary.com/en/comms-systems/accessories/headset-rail-attachments.

212.    Upon information and belief, as the Headset Rail Attachment "connect[s] directly to helmet side rails," *id.*, it would be made, used, offered for sale, sold, and/or imported into the United States with at least the following, but not limited to, Revision products, (i) Viper Interlocking Long Rails, (ii) Viper Interlocking Long Rails and Batlskin Viper Front Mount, (iii) Cobra Mini Rails, (iv) Cobra Mini Rails and Cobra Front Mount, (v) Viper P4 Full Cut Helmet System, (vi) Viper P2 Full Cut Complete System, (vii) Viper A3 Full Cut Complete System, (viii) Cobra P2 Full Cut Complete System, (ix) Viper P4 High Cut Helmet System, (x) Caiman Ballistic Helmet System, (xi) Caiman Bump Helmet System, (xii) Caiman Hybrid Helmet System; (xiii) Viper Modernization Kit – Essential; and (xiv) Viper Modernization Kit - Deluxe.

213.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports each of the Revision Accused Products listed in paragraph 205 to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/comms-systems/accessories/headset-rail-attachments; https://www.revisionmilitary.com/en/batlskin-caiman.

214.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 1 of the '328 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Revision Accused Products listed in paragraph 205 constitutes direct infringement of at least claim 1 of the '328 Patent.

215.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing each of the Revision Accused Products listed in paragraph 205.

216.    Upon information and belief, Revision is liable for contributory infringement of the '328 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States each of the Revision Accused Products listed in paragraph 205, which each include at least a component that is a material part of the invention of the '328 Patent.  Each of the Revision Accused Products listed in paragraph 205 are each especially made or especially

adapted for use in infringing the '328 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

217.    By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '328 Patent in violation of 35 U.S.C. § 271.

218.    Upon information and belief, Revision's infringement of the '328 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

219.    Upon information and belief, Revision's infringement of the '328 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

### COUNT V – INFRINGEMENT OF U.S. PATENT NO. 9,717,294

220.    Gentex reallages and incorporates by reference the allegations contained in paragraphs 1 through 219 of the Complaint as fully set forth herein.

221.    Upon information and belief, Revision has infringed and continues to infringe directly and/or indirectly, literally and/or under the doctrine of equivalents, at least claim 15 of the '294 Patent by making, using, offering for sale, selling, and/or importing into the United States the following Revision Accused Products: (i) Viper Interlocking Long Rails, (ii) Viper P4 Full Cut Helmet System, (iii) Viper P4 High Cut Helmet System, (iv) Viper P2 Full Cut Complete System, (v) Viper A3 Full Cut Complete System, (vi) Viper Modernization Kit – Essential, (vii) Viper Modernization Kit – Deluxe, (viii) Caiman Ballistic Helmet System, (ix) Caiman Hybrid Helmet System, and (x) Caiman Bump Helmet System.

222.    Claim 15 of the '294 Patent claims the following:

A device comprising:

a mounting rail configured to attach to an outer surface of a helmet, the mounting rail including a plurality of holes configured to align with existing through-holes in the helmet for facilitating common affixation of the mounting rail and retention straps to the helmet, the mounting rail extending horizontally and then at an oblique downward angle along a bend in a bottom edge of the helmet when the mounting rail is attached to the outer surface of the helmet,

wherein the mounting rail includes a retaining groove.

**A.    Viper Interlocking Long Rails**

223.    Revision's Viper Interlocking Long Rails include all of the limitations of at least claim 15 of the '294 Patent.  Upon information and belief, the Viper Interlocking Long Rails comprise a mounting rail configured to attach to an outer surface of a helmet.  *See* https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.

224.    Upon information and belief, the Viper Interlocking Long Rails comprise a plurality of holes configured to align with existing through-holes in the helmet for facilitating common affixation of the mounting rail and retention straps to the helmet.  For example, the Specification Sheet for the Interlocking Long Rails explains that it "[u]ses existing helmet holes – no new drill holes required."  *See* **Ex. K**.

225.    Upon information and belief, the Viper Interlocking Long Rails extend horizontally and then at an oblique downward angle along a bend in a bottom edge of the helmet when the mounting rail is attached to the outer surface of the helmet, wherein the mounting rail includes a retaining groove.  For example, as seen on Revision's website page for the Interlocking Long Rails, an image of the Interlocking Long Rails placed on a helmet shows these limitations are met.

56



Interlocking Long Rails

([https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails](https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails))

226.     Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Viper Interlocking Long Rails to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, [https://www.revisionmilitary.com/en/faqs](https://www.revisionmilitary.com/en/faqs) ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit level buys and are available for individual civilian purchase in the U.S."); [https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rail](https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rail).

227.     Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 15 of the '294 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Viper Interlocking Long Rails constitutes direct infringement of at least claim 15 of the '294 Patent.

228.     In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Viper

57

Interlocking Long Rails.    *See*   https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rail.

229.    Upon information and belief, Revision is liable for contributory infringement of the '294 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Viper Interlocking Long Rails, which include at least a component that is a material part of the invention of the '294 Patent and a material or apparatus for use in practicing the patented process in the '294 Patent.   The Viper Interlocking Long Rails are especially made or especially adapted for use in infringing the '294 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

**B.    Viper Helmet Systems and Modernization Kits**

230.    The following Revision Viper Products include all of the limitations of at least claim 15 of the '294 Patent: (i) Viper P4 Full Cut Helmet System, (ii) Viper P4 High Cut Helmet System, (iii) Viper P2 Full Cut Complete System, (iv) Viper A3 Full Cut Complete System, (v) Viper Modernization Kit – Essential, and (vi) Viper Modernization Kit – Deluxe.

231.    Upon information and belief, each of the Revision Accused Products listed in paragraph 230 includes the Viper Interlocking Long Rails as part of the system.  *See, e.g.*, https://www.revisionmilitary.com/en/batlskin-viper.   For reasons discussed above in paragraphs 223-225, the Viper Interlocking Long Rails contain each of the limitations of claim 15 of the '294 Patent.

232.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports the Revision Accused Products listed in paragraph 230 to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/faqs ("Batlskin Viper and Batlskin Cobra Helmets and Head Protection lines are available for military and law enforcement unit

58

level buys and are available for individual civilian purchase in the U.S."); https://www.revisionmilitary.com/en/batlskin-viper.

233.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 15 of the '294 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Revision Accused Products listed in paragraph 230 constitutes direct infringement of at least claim 15 of the '294 Patent.

234.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Revision Accused Products listed in paragraph 230. See, e.g., https://www.revisionmilitary.com/en/batlskin-viper.

235.    Upon information and belief, Revision is liable for contributory infringement of the '294 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Revision Accused Products listed in paragraph 230, which include at least a component that is a material part of the invention of the '294 Patent and a material or apparatus for use in practicing the patented process in the '294 Patent.  The Revision Accused Products listed in paragraph 230 are especially made or especially adapted for use in infringing the '294 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

C.    **Caiman Helmet Systems**

236.    The following Revision Caiman Products contain the limitations of at least claim 15 of the '294 Patent: (i) Caiman Ballistic Helmet System, (ii) Caiman Hybrid Helmet System, and (iii) Caiman Bump Helmet System.

237.    Upon information and belief, each of the Revision Accused Products in paragraph 236 comprise a mounting rail (Rail System) configured to attach to an outer surface of a helmet. *See* https://www.revisionmilitary.com/en/batlskin-caiman.  Upon information and belief, the Rail System comprises a plurality of holes configured to align with existing through-holes in the helmet for facilitating common affixation of the mounting rail and retention straps to the helmet.

238.    Upon information and belief, the Rail System of each of the Revision Accused Products listed in paragraph 236 extends horizontally and then at an oblique downward angle along a bend in a bottom edge of the helmet when the mounting rail is attached to the outer surface of the helmet, wherein the mounting rail includes a retaining groove.  For example, as seen on the webpage for the Caiman Ballistic Helmet System, the placement of the Rail System on the helmet shows that these limitations are met.



(https://www.revisionmilitary.com/en/head-systems/helmets/caiman-ballistic-helmet/caiman-ballistic-helmet-system)

239.    Upon information and belief, Revision markets, offers for sale, sells, and/or imports into the United States the Revision Accused Products listed in paragraph 236 to its partners, clients, customers, and end users who use these products across the United States, including in the District of Delaware.  *See, e.g.*, https://www.revisionmilitary.com/en/batlskin-caiman (listing prices for each of the Revision Accused Products in paragraph 236).

240.    Upon information and belief, Revision has induced and continues to induce others to infringe at least claim 15 of the '294 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Revision's partners, clients, customers, and end users, whose use of the Revision Accused Products listed in paragraph 236 constitutes direct infringement of at least claim 15 of the '294 Patent.

241.    In particular, Revision's actions that aid and abet others such as its partners, clients, customers, and end users to infringe include advertising and distributing the Revision Accused Products listed in paragraph 236.  *See* https://www.revisionmilitary.com/en/batlskin-caiman.

242.    Upon information and belief, Revision is liable for contributory infringement of the '294 Patent under 35 U.S.C. § 271(c) for offering to sell, selling, and/or importing into the United States the Revision Accused Products listed in paragraph 236, which include at least a component that is a material part of the invention of the '294 Patent and a material or apparatus for use in practicing the patented process in the '294 Patent.  The Revision Accused Products listed in paragraph 236 are each especially made or especially adapted for use in infringing the '294 Patent, and are each not a staple article or commodity of commerce suitable for substantial non-infringing use.

243. By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '294 Patent in violation of 35 U.S.C. § 271.

244. Upon information and belief, Revision's infringement of the '294 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

245. Upon information and belief, Revision's infringement of the '294 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

### COUNT VI – INFRINGEMENT OF U.S. PATENT D788,378

246. Gentex realleges and incorporates by reference the allegations contained in paragraphs 1 through 245 of the Complaint as fully set forth herein.

247. Upon information and belief, Revision makes, uses, offers for sale, sells, and imports into the United States the following products that incorporate designs that infringe the '378 Patent and thereby unlawfully misappropriate Gentex's patented and distinctive designs: (i) Viper Premium Helmet Cover – Full Cut; (ii) Viper Modernization Kit – Essential; (iii) Viper Modernization Kit – Deluxe; and (iv) Cobra Enhanced Helmet Cover – Full Cut.  *See, e.g.*, https://www.revisionmilitary.com/en/head-systems/helmet-covers; https://www.revisionmilitary.com/en/head-systems/accessories.

248. Table 1 below compares exemplary figures from the '378 Patent with exemplary images taken from Revision's website of the (i) Viper Premium Helmet Cover – Full Cut and (ii) Cobra Enhanced Helmet Cover – Full Cut.  The Viper Modernization Kit – Essential and

Viper Modernization Kit – Deluxe includes the Viper Premium Helmet Cover – Full Cut as part

of the Kit.  *See* https://www.revisionmilitary.com/en/head-systems/accessories.

| Table 1: Comparison of the '378 Patent and Revision's Accused Products | | |
|---|---|---|
| '378 Patent | Viper Premium Helmet Cover – Full Cut | Cobra Enhanced Helmet Cover – Full Cut |
|  | www.revisionmilitary.com/en/head-systems/helmet-covers/viper-premium-helmet-cover-full-cut | www.revisionmilitary.com/en/head-systems/helmet-covers/batlskin-cobra-enhanced-helmet-cover |
| | *Id.* | *Id.* |

249.    Revision, without authorization from Gentex, has made, used, offered for sale,

sold, and/or imported into the United States, and continue to make, use, offer for sale, sell, and/or

import into the United States, the (i) Viper Premium Helmet Cover – Full Cut; (ii) Viper Modernization Kit – Essential; (iii) Viper Modernization Kit – Deluxe; and (iv) Cobra Enhanced Helmet Cover – Full Cut having designs that infringe the '378 Patent.

250.     By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '378 Patent in violation of 35 U.S.C. § 271.

251.     Upon information and belief, Revision's infringement of the '378 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

252.     Upon information and belief, Revision's infringement of the '378 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

**COUNT VII – INFRINGEMENT OF D794,256**

253.     Gentex realleges and incorporates by reference the allegations contained in paragraphs 1 through 252 of the Complaint as fully set forth herein.

254.     Upon information and belief, Revision makes, uses, offers for sale, sells, and imports into the United States the following products that incorporate designs that infringe the '256 Patent and thereby unlawfully misappropriate Gentex's patented and distinctive designs: (i) Viper Modernization Kit – Essential and (ii) Viper Modernization Kit – Deluxe.  *See, e.g.*, https://www.revisionmilitary.com/en/head-systems/accessories.

255.     Table 2 below compares exemplary figures from the '256 Patent with exemplary images taken from Revision's website of the (i) Viper Modernization Kit – Essential and (ii)

Viper Modernization Kit – Deluxe.  Upon information and belief, the Viper Modernization Kits do not include a helmet but do include the Viper Interlocking Long Rails and a Viper MultiCam® Premium Full Cut Helmet Cover as part of the kit.  *See, e.g.*, https://www.revisionmilitary.com/en/modernization-kit-deluxe; https://www.revisionmilitary.com/en/catalog/product/view/id/111/s/modernization-kit-essential/category/183/.

| Table 2: Comparison of the '256 Patent and Revision's Accused Products | | |
|---|---|---|
| '256 Patent | Viper Modernization Kit - Essential | Viper Modernization Kit - Deluxe |



Helmet not included

https://www.revisionmilitary. com/en/modernization-kit- deluxe

www.revisionmilitary.com/ en/catalog/product/view/id/111/s/ modernization-kit- essential/category/183/

256.    Revision, without authorization from Gentex, has made, used, offered for sale, sold, and/or imported into the United States, and continue to make, use, offer for sale, sell, and/or import into the United States, the (i) Viper Modernization Kit – Essential and (ii) Viper Modernization Kit – Deluxe having designs that infringe the '256 Patent.

66

257.     By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '256 Patent in violation of 35 U.S.C. § 271.

258.     Upon information and belief, Revision's infringement of the '256 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

259.     Upon information and belief, Revision's infringement of the '256 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

## COUNT VIII – INFRINGEMENT OF D750,846

260.     Gentex realleges and incorporates by reference the allegations contained in paragraphs 1 through 259 of the Complaint as fully set forth herein.

261.     Upon information and belief, Revision makes, uses, offers for sale, sells, and imports into the United States the following products that incorporate designs that infringe the '846 Patent and thereby unlawfully misappropriate Gentex's patented and distinctive designs: (i) Viper P4 Full Cut Helmet System, (ii) Viper P2 Full Cut Complete System, (iii) Viper A3 Full Cut Complete System, (iv) Viper Modernization Kit – Essential; (v) Viper Modernization Kit – Deluxe; (vi) Viper Interlocking Long Rails; (vii) Caiman Bump Helmet System, (viii) Caiman Ballistic Helmet System, and (ix) Caiman Hybrid Helmet System.     *See* https://www.revisionmilitary.com/.

262.     Table 3 below compares exemplary figures from the '846 Patent with exemplary images taken from Revision's website of the Viper Interlocking Long Rails.

| Table 3: Comparison of the '846 Patent and Revision's Accused Products | |
|---|---|
| **'846 Patent** | **Viper Interlocking Long Rails** |
|  | https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails |

263. As discussed in paragraph 110, upon information and belief, the (i) Viper P4 Full Cut Helmet System, (ii) Viper P2 Full Cut Complete System, (iii) Viper A3 Full Cut Complete System, (iv) Viper Modernization Kit – Essential, and (v) Viper Modernization Kit – Deluxe all include the Interlocking Long Rails that, as shown in Table 3, infringes the '846 Patent.

264. Table 4 below compares exemplary figures from the '846 Patent with images taken from Revision's website of the (i) Caiman Bump Helmet System, (ii) Caiman Hybrid Helmet System, and (iii) Caiman Ballistic Helmet System.

| Table 4: Comparison of the '846 Patent and Revision's Accused Products | |
|---|---|
| **'846 Patent** | **Caiman Helmet Systems** |
|  FIG. 2 | **Caiman Bump Helmet System:**  https://www.revisionmilitary.com/en/head-systems/helmets/caiman-bump-helmet-system **Caiman Ballistic Helmet System**  https://www.revisionmilitary.com/en/head-systems/helmets/caiman-ballistic-helmet/caiman-ballistic-helmet-system **Caiman Hybrid Helmet System**  https://www.revisionmilitary.com/en/head-systems/helmets/caiman-hybrid-helmet-system |

265.    Revision, without authorization from Gentex, has made, used, offered for sale, sold, and/or imported into the United States, and continue to make, use, offer for sale, sell, and/or import into the United States, the (i) Viper P4 Full Cut Helmet System, (ii) Viper P2 Full Cut Complete System, (iii) Viper A3 Full Cut Complete System, (iv) Viper Modernization Kit – Essential; (v) Viper Modernization Kit – Deluxe; (vi) Viper Interlocking Long Rails; (vii) Caiman Bump Helmet System, (viii) Caiman Ballistic Helmet System, and (ix) Caiman Hybrid Helmet System having designs that infringe the '846 Patent.

266.    By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '846 Patent in violation of 35 U.S.C. § 271.

267.    Upon information and belief, Revision's infringement of the '846 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

268.    Upon information and belief, Revision's infringement of the '846 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

### COUNT IX – INFRINGEMENT OF D750,847

269.    Gentex reallages and incorporates by reference the allegations contained in paragraphs 1 through 268 of the Complaint as fully set forth herein.

270.    Upon information and belief, Revision makes, uses, offers for sale, sells, and imports into the United States the following products that incorporate designs that infringe the '847 Patent and thereby unlawfully misappropriate Gentex's patented and distinctive designs:

(i) Viper P4 Full Cut Helmet System, (ii) Viper P2 Full Cut Complete System, (iii) Viper A3 Full Cut Complete System, (iv) Viper Modernization Kit – Essential; (v) Viper Modernization Kit – Deluxe; (vi) Viper Interlocking Long Rails; and (vii) Viper Batlskin Front Mount.  *See* https://www.revisionmilitary.com/.

271.    Table 5 below compares exemplary figures from the '847 Patent with exemplary images taken from Revision's website of the Viper Modernization Kit – Essential.

| Table 5: Comparison of the '847 Patent and Revision's Accused Products | |
| :---: | :---: |
| **'847 Patent** | **Viper Modernization Kit - Essential** |
|  FIG. 1 | https://www.revisionmilitary.com/en/catalog/product/view/id/111/s/modernization-kit-essential/category/183/ |

272.    The Viper Modernization Kit – Essential is a representative illustration of the combination of the Viper Interlocking Long Rails and Batlskin Viper Front Mount.  Upon information and belief, the Viper Interlocking Long Rails "must be used in conjunction with the Batlskin Viper Front Mount."  *See*  https://www.revisionmilitary.com/en/head-systems/rail-system/batlskin-viper-interlocking-long-rails.   As discussed in paragraph 110, each of the (i) Viper P4 Full Cut Helmet System, (ii) Viper P2 Full Cut Complete System, (iii) Viper A3

Full Cut Complete System, (iv) Viper Modernization Kit – Essential, and (v) Viper Modernization Kit – Deluxe include the Viper Interlocking Long Rails and Viper Batlskin Front Mount, which, as shown in Table 5, infringe the '847 Patent.

273.    By the foregoing acts, Revision has directly literally infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '847 Patent in violation of 35 U.S.C. § 271.

274.    Upon information and belief, Revision's infringement of the '847 Patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gentex to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

275.    Upon information and belief, Revision's infringement of the '847 Patent will continue in the future, and Gentex will continue to suffer damages, as a consequence, unless Revision's infringing acts are enjoined by this Court.

**COUNT X – DECLARATORY JUDGMENT**

276.    Gentex reallages and incorporates by reference the allegations contained in paragraphs 1 through 275 of the Complaint as fully set forth herein.

277.    On or about October 29, 2009, Revision entered into a Memorandum of Agreement (the "Revision Agreement") with non-party Artisent Inc. ("Artisent").

278.    Pursuant to the Revision Agreement, Revision agreed to pay a royalty to Artisent in exchange for Revision's license to use certain proprietary patents and technology belonging to Artisent (and now Gentex), as more specifically described in the Revision Agreement.

279.    Pursuant to the Revision Agreement, Revision further agreed to provide Artisent (and now Gentex) a perpetual right to use certain technology, as more specifically described in the Revision Agreement.

280.    Pursuant to the Paragraph 16 of the Revision Agreement, neither party to the agreement was allowed to transfer their rights under the Revision Agreement to any third party without the prior express written consent of the other party.  However, as further provided in Paragraph 16, if there was a sale of control of either party, then such sale of control would not constitute a transfer of rights that would require the prior consent of the other party to the Revision Agreement.

281.    On or about December 19, 2011, Artisent entered into an Asset Purchase Agreement with Gentex, under which Gentex acquired substantially all of the assets of Artisent, including its rights in the Revision Agreement.

282.    More specifically, under the terms of the Asset Purchase Agreement, Gentex purchased "all of the Assets" of Artisent, except for certain specifically defined "Excluded Assets."  The Revision Agreement constituted an "Asset" of Artisent, and was not one of the "Excluded Assets" enumerated in the Asset Purchase Agreement.

283.    The consummation of the Asset Purchase Agreement constituted a "sale of control" of a party under Paragraph 16 of the Revision Agreement.  Therefore, Artisent could assign and transfer its rights in the Revision Agreement to Gentex without Revision's express prior written consent.

284.    Artisent desires that, pursuant to the Asset Purchase Agreement, Gentex acquire the rights belonging to Artisent under the Revision Agreement.

285.    Notwithstanding Gentex's position that the Asset Purchase Agreement constituted a "sale of control" such that Revision's consent was not required in order to transfer Artisent's rights in the Revision Agreement to Gentex, on August 31, 2018, Artisent wrote to Revision and formally requested that Revision consent to the assignment of Artisent's rights in the Revision Agreement.

286.    Revision has no good-faith basis to refuse to consent to that assignment. Nevertheless, Revision has refused to consent in writing to that assignment requested by Artisent.

287.    An actual controversy exists between Gentex, on the one hand, and Revision, on the other hand, concerning the assignment of rights under the Revision Agreement.  Under Rule 57 of the Federal Rules of Civil Procedure, and under 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto as to these matters, and to grant such relief as this Court deems necessary and proper.

**COUNT XI – BREACH OF CONTRACTUAL COVENANT OF GOOD FAITH**

288.    Gentex reallages and incorporates by reference the allegations contained in paragraphs 1 through 287 of the Complaint as fully set forth herein.

289.    The Revision Agreement specifies that it will be construed in accordance with the laws of the Province of Québec, Canada.

290.    Under Article 1375 of the Civil Code of Québec, parties to a contract are required to conduct themselves in good faith.  That code section is akin to the common law duty of good faith and fair dealing existing under the common law in the United States.

291.    In addition, the Revision Agreement specifically provides that "[t]he parties agree to cooperate in a reasonable manner and in good faith with each other for the purpose of securing

and preserving each other's rights in and to any intellectual property, technology, patents or otherwise, as may be reasonably requested by the other party hereto."

292.    Revision has failed and refused to honor its contractual obligations under the Revision Agreement, and to acknowledge, accept, and undertake it obligations with respect to the assignment of claims in Paragraph 16 of that agreement.

293.    Revision has willfully and knowingly breached is obligation to act in good faith under the Revision Agreement.

294.    As a direct and proximate result of Revision's breaches of its obligation to act in good faith, Gentex has suffered and continues to suffer damages.  Among other things, on information and belief, Revision owes royalties under the Revision Agreement, but by ignoring the assignment of Artisent's rights to Gentex under the Revision Agreement and/or refusing to consent to the transfer of those rights, Revision has avoided paying those royalties to the detriment of Gentex.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gentex prays for judgment against Defendants as follows:

1.    An adjudication that Defendants have infringed one or more claims of one or more of the Gentex Asserted Patents, either literally or under the doctrine of equivalents;

2.    A permanent injunction against Defendants, its officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of any of the Gentex Asserted Patents;

3.    An award of damages to be paid to Plaintiff by Defendants adequate to compensate Plaintiff for Defendants' past infringement of the Gentex Asserted Patents, and any

continuing infringement or future infringement through the date such judgment is entered, including pre-judgment and post-judgment interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts presented at trial as well as those acts not presented at trial;

4.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees;

5.      A judgment that Defendants' infringement was willful and trebling any damages found or assessed;

6.      A declaration that Defendants' prior express consent for Artisent to transfer its rights in the Revision Agreement to Gentex was not required;

7.      An award of damages for Defendants' breach of the requirement of good faith under Article 1375 of the Civil Code of Québec; and

8.      Awarding such other and further relief, at law or in equity, as the Court deems just and proper.

## JURY DEMAND

Gentex hereby demands a jury trial on all issues appropriately triable by a jury pursuant to Rule 38 of Federal Rules of Civil Procedure.

Dated: May 17, 2019

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Amy M. Dudash*

John V. Gorman (#6599)
Amy M. Dudash (#5741)
1007 Orange Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 574-7293
amy.dudash@morganlewis.com


Jason C. White (*pro hac to be submitted*)
Scott D. Sherwin (*pro hac to be submitted*)
Kenneth M. Kliebard (*pro hac to be submitted*)
Maria E. Doukas (*pro hac to be submitted*)
Karon N. Fowler (*pro hac to be submitted*)
77 West Wacker Drive, Suite 500
Chicago, Illinois  60601
Telephone:  (312) 324-1000
jason.white@morganlewis.com
scott.sherwin@morganlewis.com
kenneth.kliebard@morganlewis.com
maria.doukas@morganlewis.com
karon.fowler@morganlewis.com

*Counsel for Gentex Corporation*