IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GENTEX CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-921 (MN) |
| | ) |
| REVISION MILITARY LTD. and | ) |
| REVISION MILITARY, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

At Wilmington this 15th day of April 2020:

IT IS HEREBY ORDERED that the claim terms of U.S. Patents Nos. 7,849,517 ("the '517 Patent"), 7,908,667 ("the '667 Patent"), 8,028,344 ("the '344 Patent"), and 9,717,294 ("the '294 Patent") with agreed-upon constructions (*see* D.I. 55 at 1), are construed as follows:

1. "along a bend in a bottom edge" means "running on or adjacent to a bend in the bottom edge" ('294 Patent, cl. 15-18, & 24-26); and

2. "mounting facility" means:

    '667 Patent: term found in preamble is not limiting and does not require construction ('667 Patent, cl. 1-3 & 22), and

    '517 Patent and '344 Patent: "one or more components that facilitate mounting of an accessory to a helmet" ('517 Patent, cl. 1-4, 6-8, 10-12, & 14-15; '344 Patent, cl. 1-4, 7, 9-12, & 15).

Further, as announced at the hearing on March 27, 2020, IT IS HEREBY ORDERED that the following disputed claim terms of the '517, '667, '344, and '294 Patents and U.S. Patent No. 9,072,328 ("the '328 Patent") are construed as follows:

1. "for" as used in the following phrases:
    a. "for securely receiving,"
    b. "for receiving,"
    c. "for slidably and adjustably receiving,"
    d. "for slidably receiving,"

       e.    "for facilitating common affixation,"
       f.    "for threadably accepting,"
       g.    "for securing," and
       h.    "for use"

means "capable of" as in "capable of" performing the stated function ('517 Patent, cl.1-4, 6- 8, 10-12. & 14-15; '667 Patent, cl. 1-3, 8-10, 15-17, & 22-23; '344 Patent, cl. 1-4 & 9-12; '328 Patent, cl. 1-10 & 12-13; '294 Patent, cl. 15-18, 24-30, 36-38, & 40);

2. "a rail for slidably and adjustably receiving a plurality of accessories thereon" / "a rail for slidably and adjustably receiving a plurality of accessory engagement members" / "a rail for slidably and adjustably receiving a plurality of accessories" mean "a rail capable of slidably and adjustably receiving two or more 'accessories' or 'accessory engagement members,' (whichever the claim requires) at the same time" ('517 Patent, cl. 1-4 & 6-7; '667 Patent, cl. 1-3, 8-10, 15-17 & 22-23); and

3. "a plurality of accessory engagement members positionable within the at least one fixture and securable thereto" needs no construction ('517 Patent, cl. 8, 10-12, & 14-15).[1]

In addition, for the reasons set forth below:

4. "means for adjusting a distance between the ear accessory and the terminal edge of the helmet" is a means-plus-function term, the claimed function is "adjusting a distance between the ear accessory and the terminal edge of the helmet," and the corresponding structures are: (a) "a slidable connection between connecting member 77 and shoulder member 160, where the body of connecting member 77 and the edges 155 thereof form a C-shaped channel into which the shoulder member 160 is slidably received," and equivalents thereof; and (b) "pivot arm 130 rotatably connected to member 77 by a shoulder screw 148, where the shoulder screw 148 secures the yoke 130*a* to the connecting member 77 and is dimensioned so that when fully tightened against shoulder nut 153 it does not pinch too tightly, leaving clearance for the yoke 130*a* to rotate relative to the connecting member 77," and equivalents thereof ('344 Patent, cl. 7 & 15).

---

[1] After the hearing, the parties agreed that this term "does not need to be construed by the Court" and "further agreed that in the instant action no party will argue that 'within' means completely inside of or fully enclosed within." (D.I. 62).

The parties briefed the issues, (*see* D.I. 47), and submitted a Joint Claim Construction Chart containing intrinsic evidence, (*see* D.I. 55).[2] Defendants submitted subsequent authority regarding claim construction, (*see* D.I. 58), and Plaintiff filed a response thereto, (*see* D.I. 59). The Court carefully reviewed all submissions in connection with the parties' contentions regarding the disputed claim terms, heard oral argument, (*see* D.I. 60), and applied the following legal standards in reaching its decision.

I. **LEGAL STANDARDS**

    A. Claim Construction

"[T]he ultimate question of the proper construction of the patent [is] a question of law," although subsidiary fact-finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015). "[T]he words of a claim are generally given their ordinary and customary meaning [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal citations and quotation marks omitted). Although "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Id.* at 1314. "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).

The patent specification "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a

---

[2] The parties amended their original claim construction chart (D.I. 39). The Court references the amended claim construction chart (D.I. 55).

special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence, . . . consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, courts "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a

particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, although extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

B.  Indefiniteness

Section 112 of the Patent Act requires a patent applicant to "particularly point out and distinctly claim the subject matter" regarded as the applicant's invention. 35 U.S.C. § 112 ¶ 2. "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, *e.g.* competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002) (citing *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 28-29 (1997)). Put another way, "[a] patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731 (2002).

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). A claim may be

indefinite if the patent does not convey with reasonable certainty how to measure a claimed feature. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). But "[i]f such an understanding of how to measure the claimed [feature] was within the scope of knowledge possessed by one of ordinary skill in the art, there is no requirement for the specification to identify a particular measurement technique." *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1319 (Fed. Cir. 2015).

Like claim construction, definiteness is a question of law, but the Court must sometimes render factual findings based on extrinsic evidence to resolve the ultimate issue of definiteness. *See, e.g.*, *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017); *see also Teva*, 135 S. Ct. at 842-43. "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

## II. THE COURT'S RULING

The Court's rulings regarding the disputed claim terms of the '517, '667, '344, '294, and '328 Patents, except "means for adjusting a distance between the ear accessory and the terminal edge of the helmet," were announced from the bench at the conclusion of the hearing as follows:

> . . . [T]hank you for the arguments today. I really appreciate your efforts to direct me to appropriate slides and exhibits.
>
> At issue in this case, we have five patents [U.S. Patent Nos. 7,849,517 ("the '517 Patent"), 7,908,667 ("the '667 Patent"), 8,028,344 ("the '344 Patent"), 9,072,328 ("the '328 Patent"), and 9,717,294 ("the '294 Patent")][3] and . . . four terms in dispute. I am prepared to rule on three of those disputes today. I will not be issuing a written opinion as to those terms, but I will issue an order

---

[3] The '517 and '667 Patents share a substantially identical specification. The '344, '328, and '294 Patents share an identical specification. For ease of reference, the Court will, as the parties did, cite to the '517 Patent and the '344 Patent.

6

stating my rulings. I want to emphasize before I announce my decisions that while I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. I have reviewed each of the patents, the portions of the prosecution history submitted, and the other materials included in the joint appendix.[4] There was full briefing on each of the disputed terms and there has been argument here today. All of that has been carefully considered. Now as to my rulings. I am not going to read into the record my understand of claim construction law. I have a legal standard section that I have used earlier, including in my relatively recent order in *Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings,* C.A. No. 18-1436 (MN). I incorporate that law and adopt it into my ruling today, and I will also set it out in the order that I issue.

As to the person of ordinary skill in the art, the parties did not offer definitions in their papers, and there has been no argument that there are any disputes as to who such a person is that are relevant to claim construction.

The first term is "for" as used in a variety of phrases in the asserted patents, in all of which "for" is followed by a function such as "receiving."[5] The parties agree that the meaning of "for" is the same in each of the [disputed] phrases. Plaintiff asserts that the term has its "plain and ordinary meaning," [(D.I. 55 at 3),] which is unstated, though Plaintiff offers that it "denote[s] the purpose for which the object being modified is configured[," (D.I. 47 at 9).] Defendants assert that it means "capable of." [(D.I. 55 at 3).]

Here, I agree with Defendants and construe the term "for" in the disputed phrases to mean "capable of" as in "capable of" performing the stated function.

That construction is consistent with the ordinary meaning of the word as has been recognized by various courts addressing the

---

4  References to documents found in the joint appendix, (D.I. 47, Attachments 1-2), are given as "JA [page #]."

5  The phrases identified in the Joint Claim Chart (D.I. 55) are "for securely receiving," "for receiving," "for slidably and adjustably receiving," "for slidably receiving," "for facilitating common affixation," "for threadably accepting," "for securing," and "for use," as found in one or more of claims 1-4, 6-8, 10-12, and 14-15 of the '517 Patent; claims 1-3, 8-10, 15-17, and 22-23 of the '667 Patent; claims 1-4 and 9-12 of the '344 Patent; claims 1-10 and 12-13 of the '328 Patent; and claims 15-18, 24-30, 36-38, and 40 of the '294 Patent.

meaning of "for."[6] And dictionaries submitted with the papers define the term "for" as indicating suitability, fitness, appropriateness, conduciveness, adaptation, and allowance[, *see* JA 138, 143, & 152] – all of which are consistent with the construction "capable of."

The construction is also supported by the intrinsic evidence. As the parties agree, the specification does not contain a special definition of "for" that differs from the ordinary meaning the term would otherwise possess.

Additionally, during prosecution of claims reciting "a rail for slidably and adjustably receiving" a plurality of accessories or accessory engagement members, the applicants repeatedly characterized those claims as requiring a rail "capable of" receiving a plurality of accessories or accessory engagement members. For example, in the March 16, 2009 Amendment and Response during prosecution of the '517 Patent, applicants asserted that "the amended claims require a rail capable of <u>adjustably</u> receiving a <u>plurality of</u> accessories or engagement members thereof." [JA 168 (emphasis in original).] They made similar statements in the April 23, 2009 Amendment and Response[, *see* JA 191,] and the April 26, 2010 Amendment and Response[, *see* JA 197,] during the prosecution of the '667 Patent.

The Examiner, too, characterized pending claims reciting "for" as requiring capability. [*See e.g.*, '517 File History, July 7, 2009 Final Rejection, at 2 (JA 173) ("The device of Soto further is capable of receiving a plurality of accessories as claimed by the applicant."); '344 File History, June 23, 2010 Non-Final Rejection, at 3 (JA 220) ("Sjoqvist teaches a hearing attenuator capable of being used on a helmet with a bulge . . . ."); '328 File History, February 8, 2013 Non-Final Rejection, at 4 (JA 231) ("Benner teaches a mounting facility comprising . . . apertures aligning with a through-hole in the helmet that would be capable of facilitating common affixation of the mounting facility and retention straps

---

[6] *E.g.*, *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1339-42 (Fed. Cir. 2010) (apparatus claim reciting "for decoding" requires apparatus be "capable of" decoding); *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1366 (Fed. Cir. 2001) (claim reciting "three dimensional, solid, cast, hydrated, substantially uniform alkaline detergent for ware and hard surface washing" requires detergent "contain components capable of 'ware and hard surface washing'"); *Intel Corp. v. Broadcom Corp.*, 172 F. Supp. 2d 515, 546 (D. Del. 2001) ("With respect to the functional phrase 'for coupling,' the court finds that this phrase indicates only that the I/O port must be capable of being connected to an off-chip memory means . . . .") (citing *Ecolab*, 264 F.3d at 1366).

thereto.").]  And the applicant [did] not dispute those characterizations.

Although these statements do not address each of the phrases at issue using "for," the parties have agreed that "for" means the same in each of those phrases.  And I believe the referenced discussion in the prosecution history indicates that the word "for" was being used to suggest capability of performing the function.

To be clear, when I refer to the prosecution history[,] I am not finding prosecution disclaimer as applied to this disputed term or a specific definition.  I am simply using the prosecution history as a guide to the patentee's understanding of the claimed invention, as *Phillips* instructs that I may do.

The second disputed term is presented as three terms, all of which begin with "a rail for slidably and adjustably receiving a plurality of" before ending with "accessories thereon" or "accessory engagement members" or "accessories."  These terms appear in one or more of claims 1 through 4 and 6 through 7 of the '517 Patent, and claims 1 through 3, 8 through 10, 15 through 17, and 22 through 23 of the '667 Patent.

The dispute here is two-fold – first the word "for," which Plaintiff has not construed and Defendants include in their construction to mean "capable of."  The second dispute is Plaintiff's addition of the words "at the same time" to its proposed constructions and Defendants' addition of the words "at the same or different times" to their proposed constructions.

I have already addressed the issues as to the word "for" and adopt that construction here for the reasons previously stated.

As to whether the rail must be capable of receiving a plurality of accessories at the same time or merely at other times, I agree with Plaintiff.  I will thus construe these terms to mean "a rail capable of slidably and adjustably receiving two or more 'accessories' or 'accessory engagement members,' (whichever the claim requires) at the same time."

Here, the claims require that the rail be for[, for example,] "adjustably receiving a plurality of accessories thereon."  There is no dispute that "a plurality" means "two or more."

And the specification discusses having more than one accessory on the rail[] and describes the multiple accessories as

9

being on the rail at the same time. For example, the specification states that "[t]he mounting rail of the present invention utilizes an interface structure secured to the outer shell of the helmet, providing surfaces for mounting accessories [plural] onto the mounting rail instead of directly onto the helmet." ['517 Patent, col. 1 ll. 63-66.] Similarly, Figures 4a and 4b depict a rail that is receiving two accessories at the same time. [*Id.* at fig. 4a-b, col. 4 ll. 42-54.]

Revision's proposed construction allows for a single accessory to be attached at one time and then replaced by a second accessory at a different time. Although the specification allows for attachment of a single accessory, it never describes the sequential attachment as attachment of a plurality of accessories.

[The Court's] construction is also supported by the prosecution history. During prosecution of the '517 Patent, the applicants added the requirement of a plurality of accessories. Then, in the [February 9, 2006] "Comments Accompanying Request for Pre-Appeal Brief Conference" during prosecution of the '517 Patent, applicants addressed the claims[,] noting that "[e]ach of independent claims 1, 9, and 16 expressly requires that the recited helmet include a rail capable of simultaneously receiving a plurality of accessories." [*See* JA 179.]

The parties have not submitted any proceedings from the prosecution history walking back from that statement or otherwise contradicting it.

The third disputed term is "a plurality of accessory engagement members positionable within the at least one fixture and securable thereto" in claims 8, 10 through 12, and 14 through 15 of the '517 Patent. [After the hearing, the parties agreed that this term requires no construction and that "no party will argue that 'within' means completely inside of or fully enclosed within." (D.I. 62). The Court, thus, will not construe the term.]

As noted, the Court did not construe "means for adjusting a distance between the ear accessory and the terminal edge of the helmet" at the hearing. The Court will construe the term now. The parties agree that the term is a "means-plus-function" term subject to § 112, ¶ 6 and that the function claimed is "adjusting a distance between the ear accessory and the terminal edge of

the helmet." (D.I. 47 at 46). They disagree, however, about the structures that correspond to that function. (*Id.* at 46-47, 53).

Plaintiff proposes four corresponding structures, which "include": (i) "a slidable connection between the connecting member 77 and shoulder member 160"; (ii) "pivot arm 130 rotatably connected to member 77 by a shoulder screw 148"; (iii) "shoulder member 160 rotatably connected to engagement member 79 by a compression screw 226"; and (iv) "engagement member 79 slidably mounted to a recessed groove 57," as well as equivalents of each of the four. (D.I. 55 at 2-3).

Defendants dispute all of Plaintiff's asserted structures. As to the first two, Defendants argue that the proposed structures lack features necessary to perform the stated function and that they are non-specific. (*E.g.*, D.I. 47 at 53-62). As to the latter two, Defendants agree that Plaintiff's asserted structures may be capable of performing the claimed function, but assert that the specification does not clearly link those structures to that function. (*E.g.*, *id.* at 53, 62-63).

Instead, Defendants assert that the claimed function has two corresponding structures: (a) "a connecting member with a C-shaped channel into which a shoulder member is slidably received; a pair of tabs on the shoulder member that slide into complementary slots on the connecting member, wherein the tabs are flexibly joined to the shoulder member"; and (b) "a pivot arm located at the end of the articulating assembly closest to the ear accessory, wherein the pivot arm includes a yoke and split-ring cap, and wherein the pivot arm rotatably engages a post extending from the ear accessory, and wherein the pivot arm is connected to a connecting member of the articulating arm assembly with a screw and nut." (D.I. 55 at 2-3). Plaintiff protests that both of Defendants' proposed structures inappropriately "incorporate[] features unnecessary to perform the claimed function." (*E.g.*, D.I. 47 at 64-69).

11

"[A] means-plus function claim limitation is limited to the structures disclosed in the specification and equivalents." *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1296 (Fed. Cir. 2012) (citations omitted). It is not enough, however, for a disclosed structure to simply be "capable of" performing the function recited in the means-plus-function limitation. *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311-12 (Fed. Cir. 2001). Rather, "[a] court must look to the specification to determine the structures that correspond to the claimed function." *Mettler-Toledo*, 671 F.3d at 1296. "Structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (citations omitted); *see also B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) ("Th[e] duty to link or associate structure to function is the quid pro quo for the convenience of employing § 112, ¶ 6.").

Section 112, ¶ 6, however, does not "permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999); *accord K2M, Inc. v. OrthoPediatrics Corp.*, No. 17-61-GMS, 2018 WL 2426660, at *1 n.2 (D. Del. May 30, 2018) ("The structure identified in the written description must be necessary to perform the claimed function." (citing *Micro Chem*, 194 F.3d at 1258)). Thus, "[s]tructural features that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations." *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370 (Fed. Cir. 2001) (citations omitted).

Here, the Court concludes that both parties' proposed structures are unsupported by the relevant law. Defendants' proposed structures include components and features that are unnecessary to perform the claimed function. For example, Defendants' first proposed structure

requires "a pair of tabs on the shoulder member that slide into complementary slots on the connecting member, wherein the tabs are flexibly joined to the shoulder member." But the specification confirms that tabs on the shoulder member are not necessary for "adjusting a distance between the ear accessory and the terminal edge of the helmet." *See* '344 Patent, col. 8 ll. 2-8. Rather, the tabs on the shoulder member "releasably engage the shoulder member 160 to the connecting member 77" by "snap[ing] into place." *Id.* at ll. 8-10. Releasably engaging the shoulder member is separate and apart from slidably connecting the connecting member and the shoulder member, and it is the slidable connection that accomplishes the claimed function, *see id.* at col. 8 ll. 10-13 ("The slidable connection between the connecting member 77 and shoulder member 160 provides adjustment of the earphones 75 in height . . . ."). Additionally, as the specification explains, "[t]he slidable connection between the connecting member 77 and shoulder member 160 . . . may be freely sliding, or maintained by a friction fit, or preferably provided with multiple positions by forming small indentations . . . ." *Id.* at ll. 10-15.

Plaintiff's first and second proposed structures, on the other hand, suffer from the opposite problem – although they are linked to the claimed function in the specification, *see, e.g.*, *id.* at col. 8 ll. 10-12, col. 7 l. 63 – col. 8 l. 4, fig. 8(a)-(b), fig. 9, they lack the necessary specificity. Plaintiff asserted at the hearing that it was "not limiting [the proposed structures] to the numbers outlined in [the] figure[s]." (D.I. 60 at 58, ll. 7-10). In other words, Plaintiff proposes that the numbers in its asserted structures should be ignored. Plaintiff provides little argument for this position and the Court sees no reason why it should be the case. As Plaintiff pointed out in its brief, "the corresponding structure should be limited to that specific structure disclosed in the specification and its equivalents, rather than *any* [structure] capable of performing the required function." (D.I. 47 at 66 n.29 (quoting *Bennett Marine, Inc. v. Lenco Marine, Inc.*, 549 Fed. App'x 947, 954

(Fed. Cir. 2013) (emphasis in original))). That the '344 Patent utilizes numbers to refer to various aspects of the disclosed structures rather than descriptive language is of no import. To the extent those number-referenced aspects are limited by descriptions appearing elsewhere in the specification, the disclosed structures are also limited.

Finally, Plaintiff's third and fourth structures are not clearly linked or associated with the claimed function in the written description. When confronted with this argument, Plaintiff essentially argued that the structures are sufficiently linked to the claimed function because they can perform the claimed function. (*See, e.g.*, D.I. 47 at 50-52, 69-70). That, however, is incorrect. *E.g.*, *Mettler-Toledo*, 671 F.3d at 1296. Moreover, the specification generally describes the function of Plaintiff's third and fourth proposed structures as, respectively, facilitating stowage of the ear accessory behind the helmet[7] and slidably accepting engagement members within the groove of the rail[8]. Neither is clearly described as serving or is otherwise clearly linked to the claimed function of adjusting the distance between an ear accessory and the terminal edge of the helmet. *E.g.*, *Medtronic*, 248 F.3d at 1312-1313 (deeming certain disclosed structures not clearly

---

[7] *See* '344 Patent, col. 2 ll. 36-39 ("The shoulder member of the hinge mechanism may also provide rotation to allow the ear accessory to rotate to the back of the helmet, facilitating stowage when the accessory is not needed."); *id* at col. 4 ll. 1-4 ("The mounting facility may further comprise means facilitating rotation of the articulating arm to place the ear accessory behind the helmet and/or means for adjustably limiting rotation of at least one of the hinges."); *id.* at col. 7 ll. 53-58 ("[T]he wearer can move the hinge mechanism 120 to a stowage position described below, along the trajectory shown in FIG. 8D . . . .").

[8] *See* '344 Patent, col. 3 ll. 29-33 ("Accessories having an engagement member complementary to the recessed groove may be attached to the mounting rail by sliding the engagement member into the mounting-rail groove and securing it in place."); *id.* at col. 6 ll. 28-32 ("As described below . . . the earphone 75 is attached by a connecting member 77 to the engagement member 79, which can itself be positioned along recessed groove 57 by sliding engagement member 79 there along and securing it with the thumbscrew 83.").

linked to claimed function, despite being capable of that function, because specification described those structures as having functions different from that claimed).

Thus, the Court will construe the claimed function – "adjusting a distance between the ear accessory and the terminal edge of the helmet" – to have two corresponding structures: (a) "a slidable connection between connecting member 77 and shoulder member 160, where the body of connecting member 77 and the edges 155 thereof form a C-shaped channel into which the shoulder member 160 is slidably received,"[9] and equivalents thereof; and (b) "pivot arm 130 rotatably connected to member 77 by a shoulder screw 148, where the shoulder screw 148 secures the yoke 130$a$ to the connecting member 77 and is dimensioned so that when fully tightened against shoulder nut 153 it does not pinch too tightly, leaving clearance for the yoke 130$a$ to rotate relative to the connecting member 77,"[10] and equivalents thereof.

/s/ Maryellen Noreika
The Honorable Maryellen Noreika
United States District Judge

---

[9] *See* '344 Patent, col. 8 ll. 2-4 ("The body of connecting member 77 and the edges 155 thereof form a C-shaped channel into which the shoulder member 160 is slidably received.").

[10] *See* '344 Patent, col. 7 l. 63 – col. 8 l. 4 ("A shoulder screw secures the yoke 130$a$ to the connecting member 77 and is dimensioned so that when fully tightened against shoulder nut 153 (see FIG. 12A) it does not pinch too tightly, leaving clearance for the yoke 130$a$ to rotate relative to the connecting member 77.")