IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GENTEX CORPORATION, | ) |
| | ) **Redacted- Public Version** |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-921-MN |
| | ) |
| GALVION LTD., and GALVION, INC., | ) |
| | ) |
| Defendants. | ) |

## NOVEMBER 20, 2020 LETTER TO HONORABLE
## MARYELLEN NOREIKA FROM NATHAN R. HOESCHEN

Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
OF COUNSEL:                                 kkeller@shawkeller.com
Michael A. Albert                           dfry@shawkeller.com
John L. Strand                              nhoeschen@shawkeller.com
Jason W. Balich                             *Attorneys for Defendants*
Michael A. Greene
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
(617) 646-8000

Dated: November 20, 2020

**PUBLIC VERSION**

Dear Judge Noreika:

Defendants Galvion Ltd. and Galvion Inc. ("Defendants") respectfully request an order compelling Plaintiff Gentex Corporation ("Plaintiff") to provide a more substantive response to Defendants' interrogatory seeking Plaintiff's damages contentions in this case. A teleconference on this matter is scheduled for November 30 at 10:00 AM.

## Background

This case began over 18 months ago, when Plaintiff filed its complaint on May 17, 2019. The Scheduling Order required Plaintiff to provide its damages model by October 4, 2019.  (D.I. 18.)  Plaintiff's purported damages model in response to that Order provided no substantive information beyond that Plaintiff sought lost profits or a reasonable royalty.  (Ex. E.)  In response to this lack of meaningful disclosure, on November 15, 2019, Defendants served Interrogatory No. 5, which requested Plaintiff's damages contentions:

> **Interrogatory No. 5**: Identify and fully describe all damages that Gentex is claiming in this Litigation and the detailed basis for any such damages claim, including whether Gentex is seeking lost profits or a reasonable royalty, whether Gentex is seeking damages for breach of any covenant of good faith (Count XI of the Complaint), and the periods over which Gentex claims it has suffered damages. If Gentex is seeking lost profits, identify the amount of the alleged lost profits, the computation of the alleged lost profits including all revenues, income, costs, unit costs, and quantity associated with the manufacture, sales and offers for sale by Gentex or any other entity of any product Gentex contends is covered by one of more of the Gentex Asserted Patents, and each purported lost sale or other item for which Gentex claims it is entitled to lost profits. If Gentex is seeking a reasonable royalty, identify the amount of the reasonable royalty, including any royalty rate expressed in per unit or percentage of revenues terms and the basis for the per unit or percentage used, the computation of the alleged reasonable royalty, and the time period over which Gentex claims it is entitled to a reasonably royalty. If Gentex is seeking damages in connection with its breach of the covenant of good faith claim (Claim XI of the Complaint), describe in detail the complete factual and legal bases for any such damages claim.

(Ex. A at 8.) Plaintiff has thus far failed to provide an adequate response to this interrogatory, especially given the advanced stage of the litigation. Instead, in Plaintiff's first answer, served on December 16, 2019, Plaintiff provided only a generic statement that it ███████████████ ████████████████████████████████████████████████████████ (Ex. B at 13.)

After multiple letters to Plaintiff and several conferences between counsel, Plaintiff supplemented its response on October 27, 2020, but yet again failed to provide any measure of damages and failed to provide any factual basis for the vague statements that it did provide.  For example, Plaintiff states in its supplemental response that it ███████████████████████████ ████████████████████████████████████ Plaintiff does not point to any basis for the ███ royalty amount, let alone any basis for any different royalty for

"some or all" of Defendants' sales, nor does it set forth the amount of sales to which it seeks to apply any such royalty, nor any resulting figure(s). (Ex. C at 8.) Plaintiff further states that it ████████████████████████████████████████████████████████████ But again, Plaintiff provides no basis for the range, and does not identify what sales would be apportioned at ████████, or which sales would be apportioned at something in between, or what resulting sum it calculates as being owed. And Plaintiff only generically states that it "may also seek lost profits for some of the infringing sales," but provides no factual basis for what sales Plaintiff allegedly lost and the profit those sales would have generated.

In a final attempt to avoid judicial intervention, Defendant's counsel requested a meet and confer which was held on October 28, 2020. Defendants made several attempts to compromise or streamline the damages disclosure process in order to get more substantive data, but Plaintiff simply stated that it would not be providing any further information during the fact discovery phase of the case. Nor did Plaintiff provide any more substantive information regarding its "damages model" in response to its obligation to do so under the second Scheduling Order (D.I. 92) on October 30, 2020. (Ex. F.)

## Argument

There can be no serious dispute that Defendants' damages contention interrogatory is reasonably calculated to lead to the discovery of admissible evidence. Indeed, if Plaintiff does not divulge the factual basis supporting its damages theories during fact discovery, Defendants will be precluded from discovering the evidence Defendants need to rebut Plaintiff's case going into expert discovery and, eventually, trial.

A year and a half into this litigation, and almost a year after Defendants served the interrogatory, it is improper for Plaintiff still to fail to disclose its damages contentions beyond vague generalities unsupported by any factual evidence. *See, e.g., Personal Audio, LLC v. Google LLC,* No. 17-cv-1751, 2018 WL 4502002, *2 (ordering plaintiff to provide information regarding damages claim before expert discovery) (D. Del. Sept. 20, 2018); *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.,* No. 14-878, D.I. 101, 1-2 (D. Del. Jan. 28, 2016) (granting a motion to compel a supplemental response to defendant's interrogatory relating to plaintiff's claim for lost profits damages, and requiring that the response "shall amount to a meaningful articulation of the bases for [plaintiff's] contention that it is entitled to such damages" and include "a narrative explanation as to how the information contained in [certain documents referenced in a supplemental response to the interrogatory] shed light on [plaintiff's] contention that it is entitled to lost profits damages"); *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.,* 306 F.R.D. 276 (N.D. Cal. 2015) (compelling full substantive response regarding damages contentions); *Mobile Storage Tech., Inc. v. Fujitsu Ltd.,* 2010 WL 1292545, *1 (N.D. Cal. Mar. 31, 2010) (same).

Moreover, Plaintiff cannot in good faith argue that it is not in possession of the requested information. At the least, Plaintiff must have performed a pre-litigation investigation to have filed its complaint alleging it was damaged. "As a sophisticated patent holder … who certified under Rule 11 that a diligent pre-trial investigation was performed, plaintiff cannot reasonably claim that it has not yet formulated a position regarding [its damages contentions], or that it does

PUBLIC VERSION

not have the tools to do so." *SPH America, LLC v. Research in Motion, Ltd.*, 2016 WL 6305414, *4 (S.D. Cal. Aug. 16, 2016) (granting motion to compel full response to damages contentions interrogatory); *see also Anesta AG v. Mylan Pharms.*, No. 08-cv-00889 D.I. 453, 3 (D. Del. Oct. 22, 2013) (ordering plaintiffs to supplement responses to defendants' damages contentions interrogatories, finding that the "plaintiffs at bar have an obligation to provide their good faith bases for electing their theories of recovery, consistent with Fed. R. Civ. P. 11"). And this case is now well beyond the initial investigation stage; Defendant has produced spreadsheets setting forth in detail the relevant sales figures upon which Plaintiff's claims are based, and prior to the recent motion to amend, both parties had already "substantially completed" their document productions, including productions related to Defendants' sales. Plaintiff therefore has in its possession the facts needed to support its damages case. Defendants ask that Plaintiff be ordered to provide them.

In Plaintiff's supplementation of its response to Defendants' Interrogatory No. 5, Plaintiff objects that "counsel for Gentex and Galvion have had several discussions about the damages that Gentex intends to seek in this case … [which] serve as supplemental responses under Fed. R. Civ. P. 26(e)." (Ex. C at 8.) Discussions between counsel, however, cannot reasonably serve as supplemental interrogatory responses under Fed. R. Civ. P. 26(e). Nor, in any event, did Plaintiff provide the figures or calculations sought by Defendants during any such discussion.

Lastly, there is considerable benefit to requiring Plaintiff to disclose the amount and bases for its damages it seeks prior to expert discovery, as the above-cited cases require. Requiring an early disclosure of alleged damages and the calculations a party used to reach that amount allows for frank discussions of settlement early in the case, increasing the chances the case will resolve with a maximum of judicial economy, and allow the parties to appropriately direct their resources in the case. Defendants cannot otherwise know "whether this is a $1 case or a case worth billions." *Corning Optical Commc'ns Wireless*, 306 F.R.D. at 277; *cf. Twilio, Inc. v. Telesign Corp.*, No. 16CV06925LHKSVK, 2017 WL 5525929, at *3 (N.D. Cal. Nov. 17, 2017) (under N.D. California patent local rules, ordering that a "plaintiff should, at a minimum, identify the likely factors that will be considered in its apportionment calculation, quantify those factors to the extent possible, and identify the outstanding discovery directed to quantifying these factors with the particularity outlined above."). Even Fed. R. Civ. P. 26 acknowledges that to understand the needs of the case, a party is entitled to discover the "amount in controversy." Rule 26(b); *see also Corning Optical Commc'ns Wireless*, 306 F.R.D. at 279 ("Proportionality is part and parcel of just about every discovery dispute."). Indeed, the District of Delaware adopted rules requiring an early disclosure of damages models precisely for the policy reasons discussed in *Corning Optical Commc'ns Wireless*. (Ex. D at 17.) Waiting until expert discovery needlessly wastes judicial resources and the resources of the parties.

## <u>Conclusion</u>

In sum, Defendants asked for Plaintiff's damages contentions last November, but Plaintiff has only provided vague generalities in response over a year later. Defendants should be granted a definite and fulsome explanation of Plaintiff's damages contentions during fact discovery, showing specific figures and calculations, including apportionment, leading to the claimed sums by a date certain.

**PUBLIC VERSION**

Respectfully submitted,

*/s/ Nathan R. Hoeschen*

Nathan R. Hoeschen (No. 6232)

cc:     Clerk of the Court (by CM/ECF)
        All counsel of record (by CM/ECF)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GENTEX CORPORATION, a Delaware
Corporation,

    Plaintiff,

v.

REVISION MILITARY LTD., a Delaware
Corporation; and REVISION MILITARY,
INC., a Canadian Company

    Defendants.

Civil Action No.  1:19-cv-00921-MN

## **DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF (NOS. 1-10)**

  Defendants Revision Military Ltd. and Revision Military, Inc. hereby request that

Plaintiff Gentex Corporation answer, under oath, the following First Set of Interrogatories.

## **DEFINITIONS**

  The following definitions apply throughout these interrogatories, regardless of whether

upper or lower case letters are used. Unless stated otherwise, these definitions shall also apply in

any other written discovery propounded by Defendants, including interrogatories, document

requests, or requests for admission.

  1.  "Revision" means Revision Military Ltd. and Revision Military, Inc.

  2.  "Gentex" means Plaintiff Gentex Corporation including, without limitation, Ops-

Core, all Gentex Corporation's predecessors, subsidiaries, parents, and affiliates and all past or

present directors, officers, shareholders, agents, representatives, employees, consultants,

attorneys, and entities acting in joint venture or partnership with Gentex Corporation.

  3.  The terms "Plaintiff," "you," and "yours," mean Gentex as defined above.

4.      "This Litigation" means *Gentex Corp. v. Revision Military Ltd., and Revision Military, Inc.*, C.A. No. 19-921-MN.

5.      The "'517 patent" means United States Patent No. 7,849,517.

6.      The "'667 patent" means United States Patent No. 7,908,667.

7.      The "'344 patent" means United States Patent No. 8,028,344.

8.      The "'328 patent" means United States Patent No. 9,072,328.

9.      The "'294 patent" means United States Patent No. 9,717,294.

10.      The "'846 patent" means United States Design Patent No. D750,846.

11.      The "'847 patent" means United States Design Patent No. D750,847.

12.      The "'378 patent" means United States Design Patent No. D788,378.

13.      The "'256 patent" means United States Design Patent No. D794,256.

14.      "Gentex Asserted Patents" means the '517, '667, '344, '328, '294, '846, '847, '378, and '256 patents.

15.      "Accused Revision Products" means the products identified in Gentex's Identification of Accused Products, Asserted Patents, Damages Model, and Prosecution File Histories (served October 4, 2019).

16.      "Gentex Licensees" means any third party that has or had a license to practice one or more Gentex Asserted Patents.

17.      "Prior art" includes, by way of example and without limitations, the subject matter described in 35 U.S.C. §§ 102, 103.

18.      The terms "and," "or," and "and/or" shall be construed in the conjunctive or the disjunctive, whichever form renders the most inclusive request possible.  The use of the singular

shall be deemed to include the plural and the use of one gender shall include the other as appropriate in the context.

19.     The term "any" includes the term "all," and vice versa.

20.     The term "each" means each and every.

21.     The terms "document" and "documents" shall be given their broadest interpretation within the context of the Federal Rules of Civil Procedure. Any copy of a document other than the exact duplicate of that document shall be deemed a separate document, including any copy bearing any marks (including, without limitation, initials, stamped initials, comments, or notations) that are not part of the original text is a separate document. Foreign language documents, English language equivalents and English translations shall be deemed separate documents. Electronic data (including active, deleted and fragmentary files) shall be produced in all existing formats, including the format in which the electronic data was originally created and the native file format.

22.     The term "person" includes any natural person, corporation, limited liability company, partnership, firm, association, joint venture, sole proprietorship, trust, department, division, agency and any other legal, business, or governmental entity.  Unless otherwise stated, all references to corporations or other legal entities encompass (1) all predecessors or successors of such corporations or legal entities, (b) all past or present parents, subsidiaries or affiliates of such corporations or legal entities and (c) all past or present divisions, units, joint ventures, directors, officers, employees, trustees, partners, agents, consultants, accountants, attorneys and representatives of such corporations or legal entities.

23.     The term "communication" means any transmission of information from one person or entity to another including, without limitation, transmissions made by: personal

meeting, telephone, written correspondence (including without limitation letters, memoranda, and notes), facsimile and electronic transmissions such as e-mail, instant messaging, and text messaging.

24.     The term "relates to" means contains, describes, discusses, mentions, refers to, pertains to, constitutes, comprises, or evidences.

25.     The term "concern" means relating to, referring to, reflecting, describing, evidencing, or constituting.

26.     "Date" means the exact day, month, and year, if ascertainable.  If the exact day, month, and year are not ascertainable, the "date" means the best approximation possible (including relationship to other events or dates).

27.     "Identify," "identification," or "identity" with respect to any person as defined above means, and requires you to state, the person's full name (including any aliases, trade names or fictitious names), the persons' current (or last known) business affiliation, the person' current (or last known) business address and telephone number and the person's current (or last known) residential address and telephone number.

28.     "Identify," "identification," or "identity" with respect to any document means, and requires you to state, either the production number of the document, or the following:

(a) the date of the document;

(b) a general summary of the contents of the document;

(c) the identity of the custodian of the document;

(d) the identify of each person who prepared the document;

(e) the identify of each person to whom the document was addressed, to whom the document (or copy thereof) was sent and/or who at any time had possession of the document (or copy thereof); and

(f) the identity of any drafts of the document prior to the final document, consistent with this definition of "identity."

29.     "Identify," "identification," or "identity" with respect to any communication (including oral, written, telephonic, electronic or non-verbal communications) means, and requires you to state, either the production number of the document, or the following:

(a) the communication's medium (e.g., written, oral, telephonic, electronic, or any other medium);

(b) the date of the communication;

(c) the identity of all persons who were present during the communication;

(d) the substance and nature of the communication; and

(e) the identify of all documents which related to and reflect the communication.

30.     If, after conducting a reasonable investigation, a full answer cannot be given for any of these interrogatories, state that such is the case and answer to the fullest extent possible, stating what responsive information is available, what information cannot be provided, why the information is unavailable, and what efforts were made to obtain the unavailable information.

## **INSTRUCTIONS**

1.     These interrogatories shall be deemed continuing so as to require further and supplemental production in accordance with Fed. R. Civ. P. 26(e).

2.     When an interrogatory calls upon Gentex to "describe in detail the complete factual and legal bases" of or for a particular claim, assertion, allegation, or contention, Gentex shall:

(a)      identify each document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of Gentex's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b)      identify each communication which forms any part of the source of Gentex's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c)      state separately the acts or omissions to act on the part of any person (and in doing so, identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of Gentex's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and,

(d)      state separately any other fact which forms the basis of Gentex's information regarding the alleged facts or conclusions referred to in the interrogatory.

## **INTERROGATORIES**

## **INTERROGATORY 1**

For each Gentex and/or Ops-Core product you assert is or was covered by the Asserted Patents:

(i)      identify the date the product was first sold or offered for sale in the United States;

(ii)      identify all patent numbers marked on the product or packaging, or associated with the product through virtual marking;

(iii)      if the product is or was marked, identify the location and manner of the marking, when the product was first marked, the individuals or entities that marked each product, including any Gentex Licensees, and any interruptions to or other changes in the practice of marking the product since it was first marked; and

(iv)      identify all documents related to Gentex's marking of the product.

**INTERROGATORY 2**

Identify and describe each statement made by Gentex to third parties and/or Revision regarding the enforcement of the Gentex Asserted Patents, including identifying each instance where Gentex has contacted Revision or any third party regarding any of the Asserted Patents, including the name and address of each third party and the substance of and circumstances surrounding each contact, and identifying any instances where Gentex filed a lawsuit for infringement of, or otherwise sought to enforce, one or more of the Gentex Asserted Patents.

**INTERROGATORY 3**

For the Gentex Asserted Patents, identify all persons to whom Gentex has ever licensed or offered to license, or persons who have requested to license, or to whom Gentex has granted or offered to grant any other rights under, the patent, including the status or those requests and offers, whether continuing, successful, or terminated, and describe any efforts by Gentex to seek royalties for any such patent, and identify all documents related to such license, offer, request, or other grant of rights, including any licenses, settlement agreements, covenants-not-to-sue, technology transfer agreements, or any other agreements or contracts providing any rights to patents or technologies ("Agreements") entered into by Gentex, or of which Gentex is aware, that relates to any patent or patent application (from any jurisdiction or nationality) concerning (i) front mounts, (ii) helmet systems, (iii) rails, (iv) helmet covers, (v) modernization kits, or (vi) other helmet components or attachments, or that you contend is comparable to a license that Gentex and Revision would have agreed to in a hypothetical negotiation in this case.

**INTERROGATORY 4**

For each of the Gentex Asserted Patents, describe in detail the complete factual and legal bases for any contention by Gentex that Revision has willfully infringed that patent.

**INTERROGATORY 5**

Identify and fully describe all damages that Gentex is claiming in this Litigation and the detailed basis for any such damages claim, including whether Gentex is seeking lost profits or a reasonable royalty, whether Gentex is seeking damages for breach of any covenant of good faith (Count XI of the Complaint), and the periods over which Gentex claims it has suffered damages. If Gentex is seeking lost profits, identify the amount of the alleged lost profits, the computation of the alleged lost profits including all revenues, income, costs, unit costs, and quantity associated with the manufacture, sales and offers for sale by Gentex or any other entity of any product Gentex contends is covered by one of more of the Gentex Asserted Patents, and each purported lost sale or other item for which Gentex claims it is entitled to lost profits. If Gentex is seeking a reasonably royalty, identify the amount of the reasonably royalty, including any royalty rate expressed in per unit or percentage of revenues terms and the basis for the per unit or percentage used, the computation of the alleged reasonable royalty, and the time period over which Gentex claims it is entitled to a reasonably royalty. If Gentex is seeking damages in connection with its breach of the covenant of good faith claim (Claim XI of the Complaint), describe in detail the complete factual and legal bases for any such damages claim.

**INTERROGATORY 6**

Separately for each of the Accused Revision Products, state the date(s) that you first became aware of the facts underlying your contention that Revision infringes each of the Gentex Asserted Claims, identify all reasons for any delay in bringing suit against Revision, and identify all facts, documents, persons, and things relating to these events.

**INTERROGATORY 7**

For the Gentex Ops-Core RAC Headset, describe the circumstances of its development, testing, and marketing, including, but not limited to, the key date(s) in the development of the RAC Helmet (including date of conception, date of invention, and date of first prototype), the inventors of the RAC Helmet, the contribution of each inventor, what patents, if any, cover the RAC Helmet, and when the RAC Helmet was first sold or offered for sale.

**INTERROGATORY 8**

For each of the named inventors of the Asserted Patents, describe any past, present, or future relationship to Gentex and identify any documents evidencing said relationships, including any agreements, licenses, and/or correspondence between the named inventors and Gentex.

**INTERROGATORY 9**

Identify and describe in detail the complete factual and legal bases for Gentex's contention in paragraph 283 of its Complaint (D.I. 1) that consummation of the Asset Purchase Agreement constituted a "sale of control" of a party under Paragraph 16 of the Revision-Artisent Agreement, and identify any facts, information, and documents that may be contrary to any such contention, including any facts, information, and documents relating to instances in which Gentex has taken a position contrary to such contention.

**INTERROGATORY 10**

If you contend that Gentex is a party or third-party beneficiary to the Revision-Artisent Agreement, state any and all facts that support such contention, including all Documents, witnesses and Things on which you rely in support of your contention.

/s/ *John L. Strand*

OF COUNSEL:
Michael A. Albert
John L. Strand
Ethan W. Marks
Michael A. Greene
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
(617) 646-8000

Dated: November 15, 2019

Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2019, I caused a true and accurate copy of the

foregoing document to be served by electronic mail, upon the following:

John V. Gorman (# 6599)
Amy M. Dudash (#5741)
MORGAN, LEWIS & BOCKIUS LLP
1007 Orange Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 574-7293
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Jason C. White (admitted *pro hac vice*)
Scott D. Sherwin (admitted *pro hac vice*)
Kenneth M. Kliebard (admitted *pro hac vice*)
Maria E. Doukas (admitted *pro hac vice*)
Karon N. Fowler (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Suite 500
Chicago, Illinois 60601
Telephone: (312) 324-1000
jason.white@morganlewis.com
scott.sherwin@morganlewis.com
kenneth.kliebard@morganlewis.com
maria.doukas@morganlewis.com
karon.fowler@morganlewis.com

*Counsel for Gentex Corporation*

/s/ *John L. Strand*
John L. Strand

# EXHIBITS B-C

## Redacted in Their Entirety

# EXHIBIT D



# United States District Court
# District of Delaware

# Patent Study Group (PSG)

Hon. Leonard P. Stark

Fed. Bar Ass'n – D. Del. Chapter – I.P. Section

May 13, 2014



# District of Delaware
# Patent Study Group (PSG)

- Context: D. Del. in Post-AIA World
- PSG: Why
- PSG: What We Did
- PSG: What We Learned
- How We Are Changing: SLR and LPS
- Next Steps?

# Context
# D. Del. In a Post-AIA World



- Avg. 370 patent cases per District Judge
- #1 in nation
- Avg. per DJ nationwide: 10

2636 total cases
4 District Judges



# Context



**Overall Caseload Trend**



# Context





# Context





# Context

- Administrative Office of the U.S. Courts – Goal: 430 cases (weighted) per District Judge



= 12 more judges

# Context
# Lots of Patent WORK

## January 1, 2013 – April 30, 2014









29 trials:
16 jury, 13 bench

830 case-dispositive motions

113 Markman hearings

+ ADR   + Scheduling  + Discovery Disputes   + Post-Trial Motions



# PSG: Why

- Improve how we handle our docket

- Opportunity to discern "best practices"

- Interact with Pilot Program and other initiatives, reflected in Congressional, Circuit, and public interest

 **PSG: What We Did**

## January – March 2014 SLR/LPS meet:

- 120+ attorneys
- 25+ firms
- 25+ companies (NPE, telecom, internet, consumer electronic, branded and generic pharmaceuticals)
- More than 15 hours of off-the-record discussions in 20 separate sessions



# PSG: What We Did

Ashby & Geddes

Bayard

Cravath, Swain & Moore

Desmarais

DLA Piper

Farnan

Finnegan, Henderson, Garrett & Dunner

Fitzpatrick, Cella, Harper & Scinto

Fish & Richardson

Fox Rothschild

# PSG: What We Did

Mayer Brown
McDermott Will & Emery
Morris James
Morris, Nichols, Arsht & Tunnell
Morrison and Foerster
Novak Druce Connolly Bove + Quigg
Paul Hastings
Potter Anderson & Corroon
Proctor Heyman
Ratner Prestia



# PSG: What We Did

Richards Layton & Finger
Seitz Ross Aronstam & Moritz
Shaw Keller
Stamoulis & Weinblatt
Susman Godfrey
Weil, Gotshal & Manges
WilmerHale
Womble Carlyle Sandridge & Rice
Young Conaway Stargatt & Taylor

 **PSG: What We Learned**

- We're succeeding, but could improve, and could help further reduce abusive litigation
- Invest more judicial resources earlier
- Set schedule and hold counsel to it
- Issue decisions quickly
- Remain involved and accessible



# How We Are Changing SLR

## March 24, 2014

- Letter
- Patent case order
- Patent case scheduling order



Applies to all non-ANDA patent cases with schedules entered after September 24, 2013



# SLR

Dear Counsel:

As a direct result of the lively and informative discussions Judge Stark and I have had through the Court's Patent Study Group ("PSG"), I have determined to change the way I process patent cases. You will find my revised orders on my website. Any non-ANDA patent case that has had a scheduling order entered in the past six months will presumptively be switching to the new process, keeping to the extent possible the pretrial and trial dates, but probably having to add and/or change other status and hearing dates. I ask that you confer verbally with opposing counsel consistent with my new orders, which expand upon your responsibilities under Fed. R. Civ. P. 26(f) and 16, in order to conform your current order into the new format prior to meeting with me.

I apologize for the inevitable confusion and inefficiencies that come from these modifications. Clearly, however, the very nature of patent litigation has changed, and the message sent by virtually all participants in the PSG was that my process could better adjust to those changes. Judge Stark and I thank all the PSG participants for their candid observations, and I thank as well my colleagues for being supportive of my first efforts at putting the PSG lessons into practice.

I am setting aside time during the next several months to meet with counsel about the revisions to their scheduling orders. My staff will be in touch to schedule those meetings.



# How We Are Changing: SLR

- Expanded requirements for Rule 26(f) conference, followed by in-person Rule 16 scheduling conference
- Early disclosure of damages model, accused products, core technical documents
- Referral to MJ for early case management, discovery, motions to dismiss/amend/transfer
- Markman separated from summary judgment and heard before expert discovery
- Aim to issue Markman within 30 days



# How We Are Changing: SLR

- Status conference after Markman, before expert discovery, to narrow issues if appropriate
- Presumption against bifurcation of damages, to focus scope of case (e.g., identifying smallest saleable unit) and to encourage early, robust settlement discussions
- Daubert motions not permitted without approval, replaced in conference with court at the end of expert discovery
- 8 pm (east coast) deadline for timely filings



# How We Are Changing: LPS

- Early case management conference, preceded by checklist discussion among counsel
- Presumption case will be scheduled once any defendant files responsive pleading
- Scheduling trials from initial scheduling order
- Refer scheduling and motions to transfer/stay/dismiss to MJ
- Less resistance to early and separate Markmans

# How We Are Changing: LPS

- Motions to amend/strike channeled to discovery matters procedures
- Requirement that DE and lead counsel talk and provide agenda before discovery tc
- Aspirational goal for timing of Markman decisions
- Page limits for MSJ/Daubert/post trial mots
- Effort to provide post-trial inclinations



# PSG: The Future

- Working Group: study and continued dialogue
- Further focus on Default Standards
- Further focus on "related case" management challenges
- Follow up FBA-CLE

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GENTEX CORPORATION, a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 19-921-MN ) ) |
| REVISION MILITARY LTD., a Delaware corporation; and REVISION MILITARY, INC., a Canadian company, | ) ) ) |
| Defendants. | ) ) ) ) |

**PLAINTIFF'S RULE 26(a)(1) INITIAL DISCLOSURES**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiff Gentex Corporation ("Gentex" or "Plaintiff"), hereby provides Defendants Revision Military Ltd. and Revision Military, Inc. (collectively, "Revision" or "Defendants") with the following Initial Disclosures.

Gentex makes these Initial Disclosures based on information reasonably available and obtained to date, without the benefit of discovery related to this litigation from Revision or third parties with respect to Revision's Accused Products. Gentex's investigation concerning this case is continuing, and pursuant to Fed. R. Civ. P. 26(e), Gentex reserves the right to revise, correct, supplement, or clarify any of the Initial Disclosures at any time based on information developed in the course of the above-captioned action ("Action") through discovery or additional factual investigation.

By making the below disclosures, Gentex does not waive (i) the right to object on the grounds of competency, privilege, relevancy, and materiality, hearsay or any other proper ground, to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (ii) the right to object on any and all

grounds, at any time, to any discovery request or proceeding involving or relating to the subject matter of these disclosures.

## I.   **Identification of Individuals**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), Gentex identifies the following individuals likely to have discoverable information that Gentex may use to support their claims or defenses. Gentex anticipates that other individuals may also have discoverable information upon which they may rely and, thus, Gentex specifically reserves the right to identify additional individuals as discovery proceeds. Gentex takes no position as to whether any of the persons named herein should be deposed and expressly reserves the right to object to the depositions of any such persons. The subject area identified for each individual is preliminary and subject to change as Gentex's investigation continues. The identification of a particular subject matter is not a representation that the individual has full knowledge of that subject matter area, or that his or her knowledge is limited to that subject matter area.

| **Individual** | **Subject of Information** |
|---|---|
| Chandra Sankar CTO/COO *Contact through Gentex's counsel* | Leads technology group (including Advanced R&D and engineering) and operations group for all Gentex Corporation. Information regarding Gentex's business operations. Information regarding Gentex's products that practice any of the Gentex Asserted Patents, including any research, development, design, and manufacturing of those products. |
| Chris Barmore Senior Design Manager *Contact through Gentex's counsel* | Concept development leader for all Gentex Corporation. Information regarding Gentex's Asserted Patents, including, but not limited to, the corresponding patents, the patent applications, and the prosecution file histories. Information regarding Gentex's products that practice any of the Gentex Asserted Patents, including any research, development, and design of those products. |

| Individual | Subject of Information |
|---|---|
| Desmond Walsh<br>Vice President, Advanced R&D<br><br>*Contact through Gentex's counsel* | Leads R&D organization for all Gentex Corporation. Information regarding Gentex's Asserted Patents, including, but not limited to, the corresponding patents, the patent applications, and the prosecution file histories. Information regarding Gentex's products that practice any of the Gentex Asserted Patents, including any research, development, and design of those products. |
| Duco W. Noordsij<br>Chief Industrial Designer<br><br>*Contact through Gentex's counsel* | Lead industrial designer for all Gentex and named inventor on U.S. Patent Nos. D750,847 ("the '847 Patent"); 7,849,517 ("the '517 Patent"); D750,846 ("the '846 Patent"); 9,717,294 ("the '294 Patent").   May have information regarding Gentex's Asserted Patents, including, but not limited to, the corresponding patents, the patent applications, and the prosecution file histories.  Information regarding Gentex's products that practice any of the Gentex Asserted Patents, including any research, development, and design of those products. |
| Heather Acker<br>EVP/CFO<br><br>*Contact through Gentex's counsel* | Leads finance for all Gentex Corporation.  Information regarding Gentex's finances.  Information regarding the Asset Purchase Agreement with Gentex that Artisent entered into on or about December 19, 2011. |
| Jay O'Connell<br>Product Manager<br><br>*Contact through Gentex's counsel* | Former industrial designer, now works in product management in the Ground Systems business unit. Information regarding Gentex's Asserted Patents, including, but not limited to, the corresponding patents, the patent applications, and the prosecution file histories. Information regarding Gentex's products that practice any of the Gentex Asserted Patents, including any research, development, and design of those products.  Information regarding Gentex's sales, marketing, and business operations. |

| Individual | Subject of Information |
|---|---|
| Matthew Anthony Hanudel<br>Industrial Design Manager<br><br>*Contact through Gentex's counsel* | Industrial design manager for all Gentex and named inventor on U.S. Patent No. D788,378 ("the '378 Patent") and U.S. Patent No. D794,256 ("the '256 Patent"). Information regarding Gentex's Asserted Patents, including, but not limited to, the corresponding patents, the patent applications, and the prosecution file histories. Information regarding Gentex's products that practice any of the Gentex Asserted Patents, including any research, development, and design of those products. |
| Pat Stallings<br>Director, Business Development<br><br>*Contact through Gentex's counsel* | Leads business development for the Ground System business unit. Information regarding Gentex's sales, marketing, and business operations. |
| Rafe Bennett<br>Dir. Product Management<br><br>*Contact through Gentex's counsel* | Leads product management for Ground Systems business unit. Information regarding Gentex's sales, marketing, and business operations. Information regarding Gentex's products that practice any of the Gentex Asserted Patents, including any research, development, and design of those products. Information regarding Gentex's sales, marketing, and business operations. |
| Tom Short<br>VP Ground Systems<br><br>*Contact through Gentex's counsel* | Overall leadership of Ground Systems business unit. Information regarding Gentex's sales, marketing, and business operations. |
| David C. Rogers<br><br>*Contact through Gentex's counsel* | Named inventor on the '847 Patent, the '846 Patent, the '517 Patent, the '294 Patent, U.S. Patent No. 8,028,344 ("the '344 Patent"), U.S. Patent No. 9,072,328 ("the '328 Patent"), U.S. Patent No. 7,908,667 ("the '667 Patent") may have knowledge regarding the research and development related to the subject matter of the '590 Patent. |
| Charles H. Rogers<br><br>*Contact through Gentex's counsel* | Named inventor on the '294 Patent, the '344 Patent, the '328 Patent, the '667 Patent may have knowledge regarding the research and development related to the subject matter of the '590 Patent. |

| **Individual** | **Subject of Information** |
|---|---|
| Mathew M. Correa<br><br>*Contact through Gentex's counsel* | Named inventor on the '517 Patent may have knowledge regarding the research and development related to the subject matter of the '590 Patent. |
| Darwin Keith-Lucas<br><br>*Contact through Gentex's counsel* | Named inventor on the '294 Patent, the '344 Patent, the '328 Patent, the '667 Patent may have knowledge regarding the research and development related to the subject matter of the '590 Patent. |
| Emily Rose Hancock<br><br>*Contact through Gentex's counsel* | Named inventor on the '378 Patent and the '256 Patent may have knowledge regarding the research and development related to the subject matter of the '590 Patent. |
| Corporate Representative from Revision Military Ltd. | May have knowledge regarding the research and development of the Revision Accused Products; Revision's business, particularly as it relates to the Revision Accused Products; marketing materials related to the Revision Accused Products; and Revision's infringing activities. |
| Corporate Representative from Revision Military, Inc. | May have knowledge regarding the research and development of the Revision Accused Products; Revision's business, particularly as it relates to the Revision Accused Products; marketing materials related to the Revision Accused Products; and Revision's infringing activities. |
| Gentex's expert witnesses<br><br>*Contact through Gentex's counsel* | May have knowledge regarding any issue in the case. |

Additionally, the following individuals are likely to have discoverable information on the subject of prior art: (i) individuals listed in patents, publications, and/or products disclosed by any party in this matter, or disclosed by any party in any related matter.

Gentex incorporates by reference these individuals and their contact information identified in such references.

Gentex also incorporates by reference the names of, and reserves the right to call, any and all additional fact witnesses revealed during investigation or discovery that have relevant information regarding this lawsuit, including persons identified by Revision, or other persons who may be identified in documents produced or to be produced by any party or non-party in connection with this action or any related action.

Gentex incorporates by reference the names of, and reserves the right to call, any and all persons disclosed by Revision through disclosures, answers to interrogatories, responses to requests for production or for admission, pleadings, or otherwise.

Gentex's investigation, research, and analysis of the issues in this case are ongoing. If Gentex identifies additional individuals likely to have discoverable information that it may use to supports its claims and defenses, it will supplement this disclosure pursuant to Rule 26(e).

## II.   **Identification of Documents**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), Gentex identifies the following categories of documents, data compilations, and tangible things that it may use to support its claims or defenses.

| Category | Location |
|---|---|
| Information regarding Gentex's Asserted Patents, including, but not limited to, the corresponding patents, the patent applications, and the prosecution file histories. | Gentex's offices and/or Morgan Lewis' office |
| Information regarding the Asset Purchase Agreement with Gentex that Artisent entered into on or about December 19, 2011. | Gentex's offices and/or Morgan Lewis' office |
| Information regarding Gentex's sales, marketing, finance, and business operations. | Gentex's offices and/or Morgan Lewis' office |
| Information regarding Gentex's products that practice any of the Gentex Asserted Patents, including any research, development, design, and manufacturing of those products. | Gentex's offices and/or Morgan Lewis' office |

| Information regarding the Revision Agreement entered into by Revision on or about October 29, 2009 with non-party Artisent, Inc. | Revision's offices |
|---|---|

Gentex's disclosures do not constitute an admission as to the admissibility or relevance of materials or a waiver of attorney-client privilege, the protections of the work product doctrine, or any other applicable privilege or discovery protection.

In addition to the foregoing, Gentex expects to use additional documents currently in Revision's possession, custody, or control, as well as publicly available documents or documents that may be provided by third parties to support its defenses.

Gentex's investigation, research, and analysis of the issues in this case are ongoing. Gentex reserves the right to identify additional categories of documents as additional information becomes available and to supplement its identification of categories of documents pursuant to Rule 26(e) as its investigation continues.

## III.   **Damages**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), Gentex sets forth its damages theories as follows.   Gentex seek damages as allowed by law and statute as stated in its Complaint, including, but not limited to, injunctive relief, lost profits, reasonable royalty, costs of suit, interest, reasonable attorneys' fees, and disbursements (including expert fees) under 35 U.S.C. § 285.

## IV.   **Insurance**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), as presently advised, Gentex is not aware of any insurance agreement under which an insurance business may be liable to satisfy part or all of a judgment in this case.

Dated: October 4, 2019

MORGAN, LEWIS & BOCKIUS LLP

*Amy M. Dudash*

Amy M. Dudash (#5741)
1007 Orange Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 574-7293
amy.dudash@morganlewis.com

Jason C. White (admitted *pro hac vice*)
Scott D. Sherwin (admitted *pro hac vice*)
Kenneth M. Kliebard (admitted *pro hac vice*)
Maria E. Doukas (admitted *pro hac vice*)
Karon N. Fowler (admitted *pro hac vice*)
77 West Wacker Drive, Suite 500
Chicago, Illinois 60601
Telephone: (312) 324-1000
jason.white@morganlewis.com
scott.sherwin@morganlewis.com
kenneth.kliebard@morganlewis.com
maria.doukas@morganlewis.com
karon.fowler@morganlewis.com

*Counsel for Gentex Corporation*

## CERTIFICATE OF SERVICE

I, Amy M. Dudash, hereby certify that on this 4th day of October the foregoing document

was served on the below counsel of record via electronic mail:

Karen E. Keller
David M. Fry
Nathan R. Hoeschen
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com

Michael A. Albert
John L. Strand
Ethan W. Marks
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
Michael.Albert@WolfGreenfield.com
John.Strand@WolfGreenfield.com
Ethan.Marks@WolfGreenfield.com

Amy M. Dudash (#5741)

*Counsel for Plaintiff Gentex Corporation*

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| GENTEX CORPORATION, a Delaware Corporation, | |
| Plaintiff, | Case No. 19-921-MN |
| v. | |
| GALVION LTD. and GALVION INC., | |
| Defendants. | |

**PLAINTIFF'S IDENTIFICATION OF '807 PATENT ACCUSED PRODUCTS, '807
PATENT INITIAL CLAIM CHART, DAMAGES MODEL, AND '807 PATENT
PROSECUTION FILE HISTORY**

Pursuant to Paragraph 7(a) and 7(c) of the Court's Amended Scheduling Order (D.I. 92), Plaintiff Gentex Corporation ("Gentex" or "Plaintiff") provides the following: (i) identification of the Accused Products that infringe U.S. Patent No. 10,638,807 (the "'807 Patent"), (ii) Gentex's initial damages model, (iii) the prosecution file history for the '807 Patent, and (iv) an initial claim chart for the '807 Patent.

Gentex reserves the right to modify, amend, retract, or supplement these disclosures as additional information becomes available, including reserving the right to add additional patents and/or additional accused products.

**I.      Accused Products**

Based on Gentex's investigation to date, Gentex identifies the products that infringe the '807 patent.  Gentex reserves the right to supplement these disclosures as its investigation continues.

| Gentex Asserted Patent | Revision Accused Products |
|---|---|
| The '807 Patent | Gentex identifies the following Accused Products infringing at least claim 17 of the '807 Patent: <br><br> • Batlskin Viper Front Mount <br> • Batlskin Viper P6N Helmet System <br> • Viper A3 Full Cut Complete System <br> • Viper Interlocking Long Rails <br> • Viper Modernization Kit – Deluxe <br> • Viper Modernization Kit – Essential <br> • Viper P2 Full Cut Complete System <br> • Viper P4 Full Cut Helmet System <br> • Viper P4 High Cut Helmet System |

## II.    Damages Model

Based on currently available information, Gentex presents the following preliminary damages model:

Gentex seeks damages as allowed by law and statute as stated in its operative First Amended Complaint (D.I. 87). This includes, but is not limited to, injunctive relief, lost profits and/or a reasonably royalty for any past, continuing, and/or future infringement by Revision. Gentex also expects to receive pre-judgment and post-judgment interest at the highest legal rate, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts presented at trial as well as those acts not presented at trial. Genetex also expects to receive an ongoing, post-judgment royalty if a permanent injunction is not granted. Gentex also expects this case to be declared exceptional under 35 U.S.C. § 285 such that it receives reasonable attorneys' fees. Gentex further expects a holding that Revision's infringement was willful such that any damages found or assessed will be trebled.

Gentex further expects to receive damages for Revision's breach of requirement of good faith under Article 1375 of the Civil Code of Québec.

Gentex further incorporates by reference as if stated fully herein its First Supplemental Response to Interrogatory No. 5.

By way of further disclosure, Gentex states that for each count in the operative First Amended Complaint, it seeks the following damages:

- **Counts I-IX, XII** – patent damages as described above.

- **Count X** – no specific monetary damages; Gentex seeks solely a declaratory judgment.

- **Count XI, XIII** – Royalties due under the Revision Agreement.

- **Count XIV** – an equitable accounting

## III.    Prosecution File History

A copy of the prosecution file history for the '807 Patent is produced electronically herewith and bear Bates numbers GENTEX00195570-GENTEX0019647.

## IV.    Initial Claim Charts

Gentex's initial claim charts for the '807 Patent are attached hereto as Exhibit 1.

Dated: October 30, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Amy M. Dudash*

John V. Gorman (#6599)
Amy M. Dudash (#5741)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
Telephone: (302) 574-7293
amy.dudash@morganlewis.com

Jason C. White (admitted *pro hac vice*)
Scott D. Sherwin (admitted *pro hac vice*)
Kenneth M. Kliebard (admitted *pro hac vice*)
Maria E. Doukas (admitted *pro hac vice*)
77 West Wacker Drive, Suite 500
Chicago, Illinois 60601
Telephone: (312) 324-1000
jason.white@morganlewis.com
scott.sherwin@morganlewis.com
kenneth.kliebard@morganlewis.com
maria.doukas@morganlewis.com

*Counsel for Gentex Corporation*

## **CERTIFICATE OF SERVICE**

I, Amy M. Dudash, hereby certify that on this 30th day of October the foregoing document

was served on the below counsel of record via electronic mail:

Karen E. Keller
David M. Fry
Nathan R. Hoeschen
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com

Michael A. Albert
John L. Strand
Ethan W. Marks
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
Michael.Albert@WolfGreenfield.com
John.Strand@WolfGreenfield.com
Ethan.Marks@WolfGreenfield.com

*/s/ Amy M. Dudash*
Amy M. Dudash

*Counsel for Plaintiff Gentex Corporation*

5