IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GENTEX CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-921 (MN) |
| | ) |
| GALVION LTD. and GALVION INC., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM ORDER

At Wilmington this 27th day of April 2021:

As announced at the hearing on March 5, 2021, IT IS HEREBY ORDERED that the disputed claim terms of U.S. Patent No. 10,638,807 ("the '807 Patent") are construed as follows:

1. "the shroud mount coupled to the front portion of the cover" / "the first side rail mount coupled to the left side portion of the cover" / "the second side rail mount coupled to the right side portion of the cover" shall be given its plain and ordinary meaning ('807 Patent, cl. 17); and

2. "the shroud mount, first side rail mount, and second side rail mount being coupled to the component by fasteners which extend through the shroud mount, first side rail mount, second side rail mount, through the one or more holes, and through the exterior surface of the helmet" shall be given its plain and ordinary meaning ('807 Patent, cl. 17).

The parties briefed the issues, (*see* D.I. 111), and submitted a Joint Claim Construction Chart containing intrinsic evidence, (*see* D.I. 101). The Court carefully reviewed all submissions in connection with the parties' contentions regarding the disputed claim terms, heard oral argument, (*see* D.I. 115), and applied the following legal standards in reaching its decision.

### I.  LEGAL STANDARDS

A.  Claim Construction

"[T]he ultimate question of the proper construction of the patent [is] a question of law," although subsidiary fact-finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015). "[T]he words of a claim are generally given their ordinary and

customary meaning [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal citations and quotation marks omitted). Although "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Id.* at 1314. "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).

The patent specification "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence, . . . consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*,

415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, courts "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, although extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

B. <u>Indefiniteness</u>

Section 112 of the Patent Act requires a patent applicant to "particularly point out and distinctly claim the subject matter" regarded as the applicant's invention. 35 U.S.C. § 112 ¶ 2. "The primary purpose of the definiteness requirement is to ensure that the claims are written in

such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, *e.g.* competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002) (citing *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 28-29 (1997)). Put another way, "[a] patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731 (2002).

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). A claim may be indefinite if the patent does not convey with reasonable certainty how to measure a claimed feature. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). But "[i]f such an understanding of how to measure the claimed [feature] was within the scope of knowledge possessed by one of ordinary skill in the art, there is no requirement for the specification to identify a particular measurement technique." *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1319 (Fed. Cir. 2015).

Like claim construction, definiteness is a question of law, but the Court must sometimes render factual findings based on extrinsic evidence to resolve the ultimate issue of definiteness. *See, e.g.*, *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017); *see also Teva*, 135 S. Ct. at 842-43. "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

## II. THE COURT'S RULING

The Court's rulings regarding the disputed claim terms of the '807 Patent were announced from the bench at the conclusion of the hearing as follows:

> . . . So thank you for the arguments today. They were helpful. This is our second claim construction hearing. At issue today we have one patent and two disputed claim terms.
>
> I am prepared to rule on each of the disputes. I will not be issuing a written opinion, but I will issue an order stating my rulings. As I did with my ruling on the other patents, I want to emphasize before I announce my decisions that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. I have reviewed the patent in dispute. I have also reviewed the portions of the prosecution history, the dictionary definition, the invalidity contentions, and the expert declarations of Nicholas Shewchenko and Dr. James Zheng, all of which were included in the joint appendix. There was full briefing on each of the disputed terms. And there has been argument here today. All of that has been carefully considered.
>
> Now as to my rulings. Again, I am not going to read into the record my understanding of claim construction law and definiteness generally. I will incorporate the law I set out in the Markman Order I issue.
>
> Now the disputed terms:
>
> The first term consists of three similar phrases: "the shroud mount coupled to the front portion of the cover"; "the first side rail mount coupled to the left side portion of the cover"; and "the second side rail mount coupled to the right side portion of the cover" all of which are in claim 17. Plaintiff asserts that these phrases should be given their plain and ordinary meaning. Defendants argue that the disclosure lacks written description for this term or, in the alternative, that the term should be construed as "the (shroud mount, first side rail mount, or second side rail mount) coupled to the (front, left side, right side) portion of the cover using a backing plate."
>
> The dispute centers on whether a backing plate must be used to couple the mounts to the helmet cover. Here, I agree with Plaintiff that the term should be afforded its plain and ordinary meaning.
>
> The claim language supports Plaintiff's proposed construction. The claim states simply that each mount is "coupled to" a certain portion of the cover. Nothing in the language of the claim suggests that a

backing plate is used to couple the mounts to the cover. Other claims do, but claim 17 does not.

The specification discusses the use of the backing plate in the context of certain embodiments. It states that, "in some embodiments, one or more mounting devices 20, 22 are attached to cover . . . through the use of fasteners . . . and one or more backing plates."[1] Yet it also states that "[i]n one embodiment, only cover . . . couples mounting devices 20, 22 to helmet shell,"[2] with no mention of a backing plate. Thus, the specification does not clearly limit the "coupling" to use of a backing plate.

Defendants argue that the only embodiments described are those in which mounts are coupled to the helmet cover using a backing plate. Even if that were so, however, it would not necessarily limit the definition of "couple to" as it is used in the claim.

The '807 Patent does not include an explicit redefinition or disclaimer which would make it appropriate to read in such a limitation.[3] Rather, the specification explicitly states that "this invention is not limited to the exemplary embodiments shown and described, but it is intended to cover modifications within the spirit and scope of the present invention as defined by the claims."[4]

Thus, heeding Federal Circuit precedent cautioning against reading limitations from embodiments in the specification into the claims,[5] I will not do so here.

Extrinsic evidence in the form of dictionary definitions also supports Plaintiff's proposed construction. The Joint Appendix includes the Oxford English Dictionary's definition of "couple" which is defined as "tie or fasten . . . together," "fasten or link together," or alternatively as "join or connect in any way."[6] Other dictionaries

---

1    (Col. 2, ll. 41–44).

2    (Col. 5, ll. 2–4).

3    *B.E. Tech., L.L.C. v. Sony Mobile Commc'ns (USA) Inc.*, 657 F. App'x 982, 988 (Fed. Cir. 2016) ("we have rejected the notion that claim terms are limited to the embodiments disclosed in the specification, absent redefinition or disclaimer.") (citing *Phillips*, 415 F.3d at 1316, 1323).

4    (Col. 6, ll. 22–25).

5    *See, e.g., Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004); *Phillips*, 415 F.3d at 1323.

6    (D.I. 111 at JA073).

6

define "couple" as "fasten together,"[7] or "fasten, link, or associate together [or] join [or] connect."[8] It is clear that the verb "couple" has a readily understood meaning of connecting or fastening things together, and does not require a particular item, such as a backing plate, to facilitate that connection.

As to the written description argument, Defendants bear the burden of proof and, on the record before me, I am not convinced that they have shown by clear and convincing evidence that the term "lacks written description." But Defendants may continue to pursue this issue and raise it later, if appropriate.

The second term is "the shroud mount, first side rail mount, and second side rail mount being coupled to the component by fasteners which extend through the shroud mount, first side rail mount, second side rail mount, through the one or more holes, and through the exterior surface of the helmet" in claim 17. Plaintiff again proposes that this term be given its plain and ordinary meaning. Defendants argue that the term is indefinite or, in the alternative, that it should be construed to mean "the shroud mount, first side rail mount, and second side rail mount each being attached to the component by at least one fastener which goes through that mount, through the component, through the one or more holes, and through the exterior surface of the helmet." The dispute centers on which items the fasteners must extend through and in what configuration.

For a claim to be held invalid for indefiniteness, there must be clear and convincing evidence.[9] Here, as with written description, on the record I have, Defendant has not shown by clear and convincing evidence that a skilled artisan would fail to grasp what the term means after reading the claim language and the specification.

As to its construction, I agree with Plaintiff and will give this term its plain and ordinary meaning.

Defendants' proposed alternative construction seeks to read in a number of limitations that have no support in the claim language. Most notably, Defendants argue that the fasteners must extend through the component because they are designed to couple the

---

7     (*Couple*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/couple (last visited Mar. 2, 2021)).

8     (*Couple*, DICTIONARY.COM, https://www.dictionary.com/browse/couple (last visited Mar. 2, 2021)).

9     *See Nautilus*, 572 U.S. at 912 n.10 (citing *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91, 95 (2011))).

component to the mounts.[10] The claim lists five items through which the fasteners might pass: one or more of the mounts, the holes, and the surface of the helmet. The patentee could have added the component to this list, but it did not do so. Thus, the claim does not support reading in this limitation.

Nor does the specification require the fasteners to extend through the component. For example, the specification states that "[i]n one embodiment, fasteners . . . include a projection from backing plate . . . or mounting device."[11] The fact that a fastener may project from one of the items it fastens contradicts Defendants' argument that the fasteners must pass through the component to couple it to the mounts. Therefore, I will not add Defendants' suggested limitation.

The remainder of Defendants' proposed construction seeks to substitute claim language with what, in my view, are synonyms for the patentee's language. Defendants seek to change "couple to" to "attached to," "fasteners" to "at least one fastener," and "goes through" to "extends through." I do not see a need for an explicit construction of what is readily understood from the language of the claim.

Thus, as I have already stated, Defendants have not shown that this term is indefinite on the current record and I will give this term its plain and ordinary meaning.

The Honorable Maryellen Noreika
United States District Judge

---

[10]   (D.I. 111 at 17).

[11]   (Col. 4, ll. 49–53).