# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GENTEX CORPORATION, a Delaware Corporation,<br><br>                Plaintiff,<br><br>v.<br><br>GALVION LTD., a Delaware corporation; and GALVION, INC., a Canadian company,<br><br>                Defendants. | Civil Action No. 1:19-cv-00921-MN<br><br>███████████ |

**<u>Response to Galvion's Letter Requesting Leave to File a Motion for Summary Judgment</u>**

John V. Gorman (#6599)
Amy M. Dudash (#5741)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
Tel: (302) 574-3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Jason C. White (admitted *pro hac vice*)
Scott D. Sherwin (admitted *pro hac vice*)
Kenneth M. Kliebard (admitted *pro hac vice*)
Maria E. Doukas (admitted *pro hac vice*)
Karon N. Fowler (admitted *pro hac vice*)
110 North Wacker Drive, Suite 2800
Chicago, Illinois 60606
Tel: (312) 324-1000
jason.white@morganlewis.com
scott.sherwin@morganlewis.com
kenneth.kliebard@morganlewis.com
maria.doukas@morganlewis.com
karon.fowler@morganlewis.com

*Counsel for Plaintiff Gentex Corporation*

### I. Galvion is Not Entitled to Summary Judgment on its Alleged License Defense

#### A. Gentex has the right (and "standing") to challenge Galvion's license defense

Gentex agrees the RAA granted a license to Revision Eyewear Inc. There is also no dispute that Gentex is the current owner of the Asserted Patents and that Revision/Galvion **never paid royalties** under the RAA. In an attempt to hide this conduct, Galvion argues Quebec law deprives Gentex of "standing" to challenge Galvion's license defense. This is incorrect for multiple reasons.

*First*, standing is the capacity to file suit. Gentex has standing to assert **patent infringement** because it is the undisputed owner of the Asserted Patents. In response, Galvion raised a license defense and Gentex challenged the sufficiency of that defense. No one cites to a case stating that a party needs to establish separate standing to challenge the opposing party's defense.

*Second*, as discussed in Gentex's opening letter, U.S. law controls the assignment of patents and associated licenses and covenants. *See* D.I. 164. Even under Galvion's theory that Gentex needs standing to challenge their license defense, it is undisputed that Gentex acquired the Asserted Patents, thus Gentex has the right to challenge Galvion's license defense under U.S. law.

*Third*, Galvion argues that "'Sale of control,' as a matter of Quebec law (under which the license is to be construed), means the sale of 'a number of shares as carries with it the right to a majority of the votes in the election of the board of directors.'" D.I. 167 at 1 (citing *Duha Printers (Western) Ltd. v. Canada*, [1998] 1 SCR 795 at 815). This is wrong because *Duha Printers* did not construe the undefined and ambiguous term "sale of control" used in the RAA. Instead, this case only analyzed the meaning of the word "control" in the Canadian Income Tax Act. In fact, consistent with Gentex's position about the breadth of this term, the opinion states: "[m]any approaches might conceivably be adopted in the word "control" in a statute such as the Income Tax Act to a corporation. It might, for example, refer to control by "management", where management and the board of directors are separate, or it might refer to control by the board of directors. . . . The word "control" might conceivably refer to de facto control by one or more shareholders whether or not they hold a majority of shares." *Id*. In short, *Duha Printers* did not define the term "sale of control" and the opinion even confirms there are multiple ways to interpret the word "control." *Additionally*, Galvion's argument that *Duha Printers* is "a matter of Quebec law" is wrong. *Duha Printers* is an appeal from the Federal Court of Appeal, reversing a judgment of the Tax Court of Canada. It construed a word under Canadian Tax law. Quebec has a civil code based on the French Code Napoléon that governs the interpretation of contracts. The Income Tax Act is a Canadian Federal law, it is not interpreted under Quebec law, and it is not used to interpret contracts in Quebec. Put simply, the best case Galvion can find to support its argument does not even analyze the relevant phrase and is from the wrong court.

*Finally*, as discussed in Gentex's opening letter, the term "sale of control" as used in the RAA includes both an asset sale and a share sale. *See* D.I. 164. The parties agree Gentex acquired Artisent's assets, thus a "sale of control" occurred and Gentex has rights under the RAA, even if this Court determines that Quebec law controls this issue instead of U.S. law.

#### B. Scope of the License over the Continuation-in-Part Patents

Galvion argues the phrase "continuations, . . . improvements or additions or modifications thereto" in the RAA should be construed broadly to mean the "License Extends to the Continuation Patents." This is misleading. First, the '294, '846, and '847 patents are not "Continuation Patents." They are continuations-in-part. This distinction is important. A license typically includes an

implied license to continuation patents, *see Cheetah Omni, LLC v. AT&T Services, Inc.*, 949 F.3d 691 (Fed. Cir. 2020), however the factfinder must determine if the scope of the license broadly extends to continuation-in-part patents. D.I. 164-5, Ex. 5 (CCQ Article 1425). Second, this is not one phrase. It is two separate clauses: "continuations or divisions" (in ¶1 of the RAA) and "improvements or additions or modifications" (in ¶4 of the RAA). Neither phrase refers to continuation-in-part patents. These two clauses must be interpreted by a factfinder to determine the common intention of the parties. *Id*. In short, there are disputes of material fact.[1]

### C. The "Halo System" Term Does Not Include All Accused Products[2]

*First*, the RAA granted a license to "halo systems" and excluded "standalone side rails." There is a dispute whether the "non-interlocking rails" are a "halo system" because there is significant expert and fact evidence that the "non-interlocking rails" are "standalone side rails." The products are affixed to the side of the helmet, do not surround other parts of the helmet, and are not applied to other parts of the helmet. Each Put simply, there is a dispute about whether adding a component to the helmet changes these rails into a "halo system."

*Second*, the RAA granted a license to Galvion argues this covers any component sold as a single item because it is a "replacement part." D.I. 167 at 2. This is wrong because these products are not part of a "halo systems," as stated above and because they are not sold There is a dispute about whether they were sold independently.

*Third*, these are factual disputes for the factfinder. D.I. 164-5, Ex. 5 (CCQ Article 1425).

## II. Galvion is Not Entitled to Summary Judgment of Non-Infringement of the '807 Patent

The dispute is whether the Accused Products meet claim 17's last limitation. The Court's claim construction states "[t]he claim lists five items through which the fasteners might pass: one or more of the mounts, the holes, and the surface of the helmet." D.I. 116 at 8. The Court confirmed the claim does not "require the fasteners to extend through the component." *Id*. As such, Gentex's expert opined that the shroud mount, first side rail mount, and second side rail mount are coupled to the 'wing' of the shroud mount by multiple fasteners, which extend through the shroud mount, first side rail mount, second side rail mount, and the helmet. Ex. B Shewchenko Reply Rpt. ¶ 120. A reasonable jury could find this limitation present in the Accused Products.

## III. The Accused Products are not Plainly Dissimilar from the Claimed Designs

Galvion mischaracterizes Gentex's expert's testimony and relies on an improper "element-by-element comparison [of the patented and the accused designs], untethered from application of the

---

[1] This issue is moot because Galvion lost its license by failing to pay royalties and causing other material breaches. Further, Galvion can't admit that the "license that Artisent granted to Galvion was broad," and credibly argue the term "sale of control" should be construed narrowly.

[2] This issue is also moot because Galvion lost its license. Further, Gentex's expert did not make the alleged "admissions" as the Court will see in reviewing the testimony.

2

ordinary observer inquiry to the overall design." *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371-72 (Fed. Cir. 2006). Galvion's argument would lead to "procedural error." *Id*. at 1373 ("the trial court mistakenly analyzed each element separately instead of analyzing the design as a whole."); *Crocs v. ITC*, 598 F.3d 1294, 1297 (Fed. Cir. 2010) (ITC "placed undue emphasis on particular details of the patented design . . . [which] became a mistaken checklist for infringement."); *Ethicon Endo-Surgery v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) ("Differences . . . must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation.").

The parties agree the patented and accused designs have differences. That does not render designs "plainly dissimilar." Infringement occurs when "the overall appearance of the patented design and the accused design be substantially similar to the ordinary observer." *Egyptian Goddess Inc. v. Swisa Inc.*, 543 F.3d 665, 671 (Fed. Cir. 2008). Infringement focuses on "the similarities in the overall design, not of similarities in ornamental features in isolation." *Crocs*, 598 F.3d at 1297 ("concentrat[ing] on small differences in isolation distract[s] from the overall impression of the claimed ornamental features."). Galvion improperly focuses on design elements in isolation. Gentex's expert repeatedly explained that, despite differences, the accused designs have the same overall appearance as the patented designs. Ex. C ¶¶ 87-88, 91, 96-97, 106, 108, 115-16; Ex. D ¶¶ 41, 65. A jury could reasonably conclude the overall appearance of the patented and accused designs is substantially the same. ***Additionally***, courts also reach this same conclusion despite differences in the designs. *Kao v. Snow Monster Inc.*, 2019 WL 2164192, at *3-*6 (C.D. Cal. 2019) ("looking at the design as a whole, there is a triable issue as to whether the Accused Product's overall effect of its design is substantially similar to the '601 Patent" because "a reasonable juror could find that an ordinary observer would conclude that the Accused Product, while slightly larger with a longer neck and a wider mouth, embodies a classic light bulb"); *Junker v. Medical Comp. Inc.*, 2019 WL 109385, at *5-*6 (E.D. Pa. 2019) ("[D]espite the differences pointed out by Defendants, I cannot conclude that the overall designs are so plainly dissimilar that no reasonable jury could conclude that the designs are substantially the same" because "the Mickey Mouse ear shape of the wings, their upswept configuration, and the orientation of the ribs on the top and bottom surfaces, are all visually prominent features common to the D'839 Patent and each of the Accused Products."); *OraLabs, Inc. v. Kind Group LLC*, 2015 WL 4538444, at *8-*10 (D. Colo. 2015) ("Although OraLabs notes three differences between the designs, the Court cannot conclude, based on those differences alone, that no reasonable jury could find that the designs are not substantially the same.").

Further undermining Galvion's argument is "[t]he substantial similarity between the accused products and the claimed design [that] is also highlighted by the design's visual departure from the prior art" because "the predominating visual element of the claimed design's overall visual impression . . . differs significantly from [that of] the prior art." *Junker*, 2021 WL 131340 at *17. Gentex's expert found the primary design feature in the patented and accused designs is entirely ***absent in the prior art***. Ex. C ¶¶ 112, 116; Ex. D ¶ 64. *Egyptian Goddess*, 543 F.3d at 676-678 ("Where the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing."); *e.g.*, *Kao v. Snow Monster Inc.*, 2019 WL 2164192, at *3-*6 ("The Court finds that a reasonable juror could consider the Accused Product to most closely resemble the '601 Patent in light of the prior art references" because "the prior art designs depart from the traditional light bulb shape that the '601 Patent depicts"). Ex. E (Exhibits to Fletcher Reply Expert Report) (comparing the prior art, patented and accused designs).

Respectfully submitted,

*/s/ Amy M. Dudash*

Amy M. Dudash (DE Bar No. 5741)
*Counsel for Plaintiff Gentex Corporation*

4